CITY OF HOUSTON et al. v. BAKER et al.†
(No. 7019.)

(Court of Civil Appeals of Texas. Galveston. May 25, 1915. Rehearing Denied June 24, 1915.)

1. TAXATION ☞40—UNIFORMITY — CONSTITUTIONAL PROVISIONS.

Const. art. 8, § 1, provides that taxation shall be equal and uniform, and that all property shall be taxed in proportion to its value, ascertained as provided by law. Section 2 provides for the exemption of certain property by general laws, and that all laws exempting other property shall be void. The charter of the city of Houston provides that every person owning or holding property shall under oath render to the assessor and collector a full and complete inventory of all property owned or held by him, whether real, personal, or mixed, and that all property, real, personal, and mixed, shall be subject to taxation. *Held* that the so-called "Houston Plan of Taxation," whereby land was taxed at 70 per cent. of its full value, improvements on land at 25 per cent. of their full value, stocks of merchandise and similar personal property at 50 per cent. of their full value, and money, stocks, mortgages, and similar property were not taxed at all, was violative of the constitutional requirement of uniformity and was illegal.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. ☞40.]

2. TAXATION ☞320—ORDINANCES—MUNICIPAL ACTION.

Although there was no ordinance of a city expressly exempting household goods, money, mortgages, and similar personal property from taxation, the deliberate omission of such property from taxation by the city and its taxing officers in legal effect was the same as if done under an ordinance of the city.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 535; Dec. Dig. ☞320.]

3. MANDAMUS ☞112—DISCRIMINATORY TAXES—REMEDY.

Mandamus is a proper remedy for persons injuriously affected by a discriminatory system or plan of taxation.

Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 238–248; Dec. Dig. ☞112.]

4. TAXATION ☞498—DISCRIMINATION — INJUNCTION.

Injunction is a proper remedy for persons injuriously affected by a discriminatory system or plan of taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 913–919; Dec. Dig. ☞498.]

5. TAXATION ☞498 — ILLEGAL PLAN — INJUNCTION—PARTIES ENTITLED.

Where plaintiffs showed that a plan of taxation which defendant city was about to enforce in violation of the constitutional requirement of uniformity would require owners of unimproved land to pay taxes far in excess of the amount they would have to pay if all property in the city were taxed under the system contemplated by the Constitution and the city charter securing taxation of all property and equal valuation of all classes of property, equity would interfere to restrain a further operation of the city's tax plan.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 913–919; Dec. Dig. ☞498.]

6. TAXATION ☞494—ILLEGAL TAX PLAN—INJUNCTION—INADEQUACY OF REMEDY AT LAW.

In such case, where it appeared that plaintiffs' lands were singled out by such plan of taxation to bear the principal burden of taxation contrary to the Constitution, whereby their value and their availability for investment was reduced, the existence and enforcement of the illegal tax plan constituted such a cloud on the title of their lands as equity would remove.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 884–888; Dec. Dig. ☞494.]

7. TAXATION ☞498—ILLEGAL TAX PLAN—GROUNDS OF INJUNCTION—MULTIPLICITY OF SUITS.

Where defendant city was putting into operation an illegal tax plan, so that all the owners of land situated similarly to plaintiff might successfully resist the payment of excessive taxes when the city made demand therefor, and the validity of the act might be determined in one proceeding by parties entitled to relief, equity might interfere to restrain the assessment and collection of taxes illegally imposed, on the ground of avoiding a multiplicity of suits.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 913–919; Dec. Dig. ☞498.]

8. TAXATION ☞498—ILLEGALITY—PREVENTING COLLECTION.

Where different classes of property are systematically valued at different ratios of value for purposes of taxation, and the owner pays or tenders the amount of taxes that would be due on a proper valuation, the law will restrain the collection of taxes from property on a higher ratio of value than that applied to other classes of property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 913–919; Dec. Dig. ☞498.]

9. TAXATION ☞498—INJUNCTION — INADEQUACY OF REMEDY AT LAW.

The fact that, where the property of a certain class belonging to one person is valued for taxation at a higher rate than property of a different class, the owner, by paying or tendering the amount of taxes that would be due on the lower valuation, may defeat the collection of taxes based on the higher valuation, does not afford an adequate remedy at law so as to preclude an injunction, where a city's illegal tax plan, exempting one class of property from taxation, would seriously embarrass its fiscal affairs by a failure to produce the funds necessary to pay the expenses of government.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 913–919; Dec. Dig. ☞498.]

10. TAXATION ☞498 — ILLEGAL PLAN—INJUNCTION—TIME.

Where a city had begun to assess the values of property for 1915 under an illegal and unconstitutional plan, and the city council, on plaintiffs' petition thereto, had declared that it would continue the plan for that year, plaintiffs' suit for mandamus and injunction against the city and its taxing officers to enjoin the enforcement of such plan was not premature.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 913–919; Dec. Dig. ☞498.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

11. TAXATION ⬡⟹498—ILLEGAL PLAN—IN-
JUNCTION—ENFORCEABILITY OF ORDER.

In such suit, an order made after a hear-
ing, reciting that the plan sought to be en-
joined would be adhered to unless forbidden
and that it violated the Constitution and the
rights of plaintiffs and others similarly situated,
and directing a temporary injunction against
defendants with respect to such taxes, com-
manding that they thereafter proceed legally
and constitutionally so that the taxes should
be equal and uniform on all classes of taxable
property and be proportional to the value, was
sufficiently definite, and did not trench upon
any discretionary powers of defendant city or
of its taxing officers.

[Ed. Note.—For other cases, see Taxation,
Cent. Dig. §§ 913–919; Dec. Dig. ⬡⟹498.]

12. TAXATION ⬡⟹498—ILLEGAL PLAN — IN-
JUNCTION—RIGHT TO INTERVENE.

In a suit by taxpayers to enjoin defendant
city and its officers from violating the constitu-
tional requirement of equality and uniformity
of taxation, leaving it to the discretion of
the taxing authorities to fix any per cent. of
full value as a basis of taxation, a request to
intervene by a petition seeking to compel de-
fendants to tax all property at 100 per cent.
of its value and to deprive them of discretion
in fixing a lower value which might be equal
and uniform, and to have plaintiffs' case dis-
missed, did not seek the same relief as that
sought by plaintiffs, and was properly denied.

[Ed. Note.—For other cases, see Taxation,
Cent. Dig. §§ 913–919; Dec. Dig. ⬡⟹498.]

13. APPEAL AND ERROR ⬡⟹95—ORDERS AP-
PEALABLE—INTERLOCUTORY ORDER.

On appeal from an interlocutory order
granting an injunction from which an appeal
lies only in virtue of a statute, and where the
only question determinable is whether the court
properly granted the preliminary injunction on
the petition filed, one whose petition in inter-
vention was never filed had no right under the
statute to appeal from the order denying his
request to intervene.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 649–654; Dec. Dig. ⬡⟹
95.]

Appeal from District Court, Harris Coun-
ty; John A. Read, Judge.

Suit by J. W. Baker and another, execu-
tors of Rebecca Baker, deceased, J. J. Sette-
gast, and others, for mandamus and injunc-
tion against the City of Houston and others,
in which the request of H. F. Ring to file a
petition in intervention was refused. Order
and decree for plaintiffs, and defendants and
Ring appeal. Affirmed.

Sam, Bradley & Fogle, of Houston, for ap-
pellants. Wilson, Dabney & King, of Hous-
ton, for appellees.

McMEANS, J. This suit was brought by
J. W. Baker and Joe F. Meyer, executors of
the estate of Rebecca Baker, deceased, J. J.
Settegast, H. F. Cohen, S. Rosenberg, and
M. P. Geiselman, for themselves and for all
others similarly situated, against the city of
Houston, a municipal corporation, and Ben
Campbell, its mayor, J. J. Pastoriza, H. A.
Halverton, Dave Fitzgerald, and Mat Dren-
nan, aldermen of said city, and who, together
with the mayor, constitute the city council of
said city, and T. R. Browne, assessor and

collector of taxes for said city, and the said
Pastoriza, Halverton, Fitzgerald, and Browne,
who constitute the board of appraisement of
said city, praying for a writ of injunction
and mandamus against the defendants to
compel the city of Houston to abandon that
which is known as the "Houston Plan of
Taxation," by and under which land is taxed
at 70 per cent. of its full value, improve-
ments on land taxed at 25 per cent. of its
full value, stocks of merchandise and similar
personal property taxed at 50 per cent. of its
full value, and money, stocks, bonds, notes,
mortgages, and similar personal property are
not taxed at all, but exempted by the city
and its taxing officers from the payment of
any taxes whatever; and to require said city
and its taxing officers to tax all property in
said city, not exempted by the Constitution
from taxation, without discrimination, at the
same ratio or portion of value.

The court upon being presented with the
petition set a day for hearing thereon, and
notice thereof was duly given to the defend-
ants, who appeared and answered. The mat-
ter was heard upon the sworn petition of
plaintiff and answer of defendants and
amendments thereof, affidavits, and docu-
ments, and at the conclusion of the hearing
the court made and entered its order, in
part reading as follows:

" * * * And it appearing to the court that
said petition prays for a mandamus and injunc-
tion to compel the city of Houston to abandon
the so-called 'Houston Plan of Taxation,' on
the ground that said plan of taxation discrimi-
nates against certain classes of taxable prop-
erty, and also that it fails to comply with the
Constitution, by exempting certain classes of
property from taxation which are not exempt
under the law; and it appearing to the court,
as alleged by the plaintiffs, and in essential
particulars admitted and proven, that this plan
of taxation was deliberately adopted, and would
be adhered to unless forbidden by the courts,
and that same involves the practice of taxing
different kinds or classes of property at differ-
ent proportions or ratios of value, and of vir-
tually exempting certain classes of property
from taxation altogether, and that said plan of
taxation was violative of the Constitution of
the state, and of the rights of the plaintiffs in
this suit, and of all others similarly situated,
on behalf of whom the plaintiffs sued; and it
appearing to the court that the defendants are
valuing different classes of property for pur-
poses of taxation at different ratios, or propor-
tions of value, and particularly are valuing
lands without or independent of improvements
at a much higher proportion of full value than
is applied to other classes of taxable property,
thereby requiring of such land without improve-
ments to pay in excess of its just and legal
proportion of taxes; and it also appearing to
the court that defendants are also exempting
certain classes of taxable property from any
taxation whatever, all of said acts being done
by defendants by a fixed and established plan
of discrimination and exemption—it is there-
fore ordered by the court that, on the plaintiffs
giving bond in the sum of $1,000, the clerk of
this court will issue a writ of temporary in-
junction commanding and enjoining the de-
fendants and each of them with respect to
the taxes for the year 1915, and thereafter that
they proceed to value the taxable property in

the city of Houston, and all classes of taxable property in the city of Houston, without discrimination in valuation for or against any class of taxable property, and without exempting any class of taxable property (not exempt by the Constitution of Texas) from the taxes of the city of Houston, and commanding and enjoining the defendants and each of them that they be enjoined and prohibited from valuing different classes of taxable property at different ratios or proportions of full value for purposes of taxation, and particularly enjoining and prohibiting the defendants and each of them from valuing lands without improvements at a higher ratio or proportion of full value than is applied uniformly to all other taxable property and classes of taxable property in the city of Houston, to the end that the taxes of the city of Houston shall be equal and uniform on all classes of taxable property in said city, and shall be proportional to value as required by the Constitution of the state."

From this order and decree of the court, the defendants have appealed.

The following facts were alleged and substantially proved, viz.:

The Houston Plan of Taxation has been in force and operation in the city of Houston for several years. It was under this plan that taxes were assessed and collected for the year 1914. Under this plan the city taxes land without improvements at 70 per cent. of full value, improvements on land at 25 per cent. of full value, stocks of merchandise and similar personal property at 50 per cent. of full value, and entirely omits from taxation household goods, money, stocks, bonds, mortgages, notes, credits, and other similar personal property. The taxable values of property in the city of Houston of the classes taxed amount to more than $109,000,000, while the value of the class of property exempted from taxation, or not taxed under said plan, amounts to several million dollars.

Plaintiffs are the owners of property in the city of Houston taxable under the Constitution and laws of the state and the charter of the city, their property consisting largely of land which, in value, far exceeds the value of their other taxable property with the possible exception of plaintiff Settegast. As an example, the estate of Baker owns land of the value of $324,570, improvements upon land of the value of $7,510, and cash on hand $18,793.97; so that, under said plan of taxation, the estate would be required to pay taxes on 70 per cent. of $324,570 valuation, 25 per cent. on $7,510 valuation, and escape taxation altogether on $18,793.97 valuation. A simple calculation will show that under said plan the estate of Baker and other plaintiffs similarly situated would be required to pay taxes far in excess of the amount they would have to pay if all property in the city were taxed and taxes were equal and uniform and proportional to values.

The city of Houston and its taxing officers intend to, and if not enjoined will, follow in the year 1915 the same plan of taxation adopted and acted on by it in the year 1914, and the several years previous thereto, of taxing lands at 70 per cent. of their full value, improvements on land at 25 per cent. of their full value, stocks of merchandise and similar personal property at 50 per cent. of their full value, and omitting from taxation household goods, money, stocks, bonds, notes, mortgages, credits, and similar personal property; and to this end said city and its said officers, before the expiration of the year 1914, had made out assessment sheets for the year 1915 of property taxed under said plan, for the signature of the property owners, and a great many of the property owners and taxpayers signed such assessment sheets before the expiration of 1914, and others had signed and were signing such sheets after the 1st day of January, 1915, and the city and its said officers were thus actively putting into effect its intention to follow the Houston Plan of Taxation for the year 1915, and will follow said plan for said year unless restrained.

Plaintiffs' petition contained a sworn allegation, which was not denied, that lands being singled out in violation of the Constitution to bear the principal burden of the taxes of the city of Houston, reduced the value of plaintiffs' lands and their availability for investment.

On December 30, 1914, Hon. Ben Campbell, mayor of Houston, published in the Houston Post a formal invitation, to any one who might believe that the Houston Plan of Taxation was illegal and unconstitutional, to take the matter into the courts, so that it might be settled at once and for all. In this publication he stated:

"We found the plan here when we came into office, but if it is illegal and unconstitutional, it should be settled. It is for this reason that I invite any one who believes the plan to be illegal to file suit against the council and commission, praying for mandamus requiring them to levy taxes in accordance with their construction of the constitution and the law, and enjoining them from doing it in any other manner."

Following this invitation, William H. Wilson, Esq., counsel for the plaintiffs, interviewed the mayor and city council and obtained from them an authoritative statement as to the different percentages of values used in valuing different classes of property for taxation, which was as hereinbefore stated, and thereafter the plaintiffs presented a petition to the city council requesting a discontinuance of said plan of taxation, and demanding the taxation of all taxable property proportionally to value, without discrimination against any class of property. This petition was acted upon by the city council, and the relief prayed for was refused.

The charter and ordinances of the city of Houston provide that the owners of property subject to taxation in the city shall render for taxation all property therein owned by them on the 1st day of January, and that such rendition shall be made between the 1st days of January and March, and it is

made the duty of the board of appraisement, including the assessor and collector and tax commissioner, to receive such assessments between said dates. It is the duty of the board of appraisement to equalize values. The owners of property may appeal from the action of the taxing officer making the assessment to the board of appraisement or equalization, and from the action of this board to the city council; but there is no appeal from the action of the city council fixing values of property, and its action in that regard is final and conclusive and no appeal therefrom lies. Neither the charter nor the ordinances provide for any hearing before the board of appraisers or the city council where the question is, not as to the values of taxable property, but as to the respective proportions of value which shall be used by the city and its taxing officers in the assessment of the respective classes of property.

H. F. Ring, a citizen of Houston, owning both real and personal property in said city subject to taxation, asked permission of the court to intervene; but his request was refused. In his petition in intervention, he adopted all of the allegations of fact in the petition of plaintiffs and the answer of defendants, but not the conclusions based upon the facts alleged. The relief sought by him was, not that all property in the city subject to taxation should be taxed at the same ratio or proportion of its full value, as prayed by plaintiffs, but that the defendants be commanded to value all kinds and classes of property at the true and full value of same in money. He further prayed that the plaintiff's suit be dismissed, without prejudice and with express permission to reinstate the same after the second Monday in April, 1915, if a necessity therefor should then arise. This prayer was based upon an allegation in his petition for intervention to the effect that an entirely new board of taxing officers would be elected on that date and installed one week later, in which new board the power of approving the tax rolls was vested by the charter and ordinances of the city of Houston, and that the entry by the court of any order in this case in advance of the approval of said rolls would be illegal, confusing, and of no avail. He prayed other relief, the character of which need not be here stated. From the action of the court in refusing to permit him to file his petition of intervention, he also has appealed.

We shall first dispose of the questions presented for a reversal by the city of Houston and its coappellants.

[1, 2] Section 1 of article 8 of the Texas Constitution provides:

"Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Section 2 of article 8, after providing that the Legislature by general laws may exempt certain property from taxation, none of which is within the class of that omitted from taxation by the city of Houston, further provides that "all laws exempting property from taxation, other than the property above mentioned, shall be void."

The charter of the city of Houston provides:

"It shall be the duty of every person owning or holding property in the city of Houston to render under oath to the assessor and collector of taxes, * * * within the time prescribed by the ordinances of said city, a full and complete inventory of all property so owned or held by him, whether real, personal or mixed. * * * All property, real, personal or mixed * * * is subject to taxation. * * *"

While there is no ordinance of the city of Houston which expressly exempts household goods, money, stocks, bonds, mortgages, notes, credits, and other similar personal property, the omission of such property from taxation is the result of design and a deliberately fixed plan of the city of Houston and its taxing officers, and in legal effect is the same as if done under and by virtue of an ordinance duly adopted by the city council. Hoefling v. San Antonio, 85 Tex. 230, 20 S. W. 85, 16 L. R. A. 608. That the plan so adopted and acted upon for the last several years, and which the city and its taxing officers intended to act upon for the year 1915, is illegal, we think is clearly shown by the provisions of the Constitution of this state and of the charter of the city of Houston above quoted, as well as a vast array of the decisions of the courts of last resort in this and many other states. Nor, indeed, do counsel for the city and its taxing officers contend otherwise, but, on the contrary, expressly admit the illegality of the plan, by the use of the following language in their brief:

"It was not contended on behalf of appellants in the trial court, and it will not be contended in this court, that the plan of taxation alleged in appellees' petition to have been adopted by appellants is a legal or constitutional plan of taxation."

In view of this admission, we will not further dwell upon this branch of the case, but with the simple statement that said plan is violative of the provision of the Constitution which demands uniformity of taxation, and requires that all property be taxed in proportion to its value, and of the provision of the charter which subjects all property in the city to taxation, will pass to a discussion of the contentions of the appellant which may be stated in the form of questions, as follows: (1) Do the allegations of plaintiffs' petition and the proof show that plaintiffs would sustain injury should the plan be pursued? (2) Have the plaintiffs an adequate remedy at law? (3) Was the suit brought prematurely? (4) Is the injunction enforceable?

[3, 4] We shall not pause to discuss the question of whether the proper remedy of

persons injuriously affected by a discriminatory system or plan of taxation is by mandamus or injunction, further than to say that, while we gather from the authorities that mandamus is the favored remedy, the remedy by injunction has often been resorted to and sustained. Lively v. Railway, 102 Tex. 545, 120 S. W. 852; Langley v. Smith, 126 S. W. 660; Cummings v. Bank, 101 U. S. 155, 25 L. Ed. 903; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71.

[5] Answering the question whether plaintiffs showed that they were injured by the system complained of by them by which unequal valuation of different classes of property for taxation was made, we think it sufficient to refer to the case of the Baker estate, used for illustration in our findings of fact, wherein it is shown that said estate owned lands of the value of $324,570, improvements upon land of the value of $7,510, and cash on hand $18,793.97, and that under the discriminatory plan of taxation the estate would be required to pay taxes on 70 per cent. of the value of the land, 25 per cent. of the value of the improvements upon land, and escape the payment of taxes upon the amount of cash on hand. All the other plaintiffs were similarly situated with respect to their ownership of property in the city, with the possible exception of the plaintiff Settegast.

As we have heretofore stated, a simple calculation will show that under this system the estate of Baker and others similarly situated would be required to pay taxes far in excess of the amount they would have to pay if all property in the city were taxed under the system, contemplated by the Constitution and of the charter of the city of Houston of taxation of all property and equal valuation of all classes of property. This being true, there can be no question that they would be directly injured by the illegal plan adopted by the city; and as the injury was sustained, not solely by an individual, but by a large class of individuals, there can be no question that equity may properly interfere to restrain the further operation by the city of the plan of taxation which is manifestly and admittedly unconstitutional and illegal. Cummings v. National Bank, 101 U. S. 159, 25 L. Ed. 903.

[6] As to the contention that plaintiffs have an adequate remedy at law, it is shown by the sworn allegations of plaintiffs' petition, which are not denied, that lands being singled out by said plan of taxation to bear the principal burden of taxation, contrary to the Constitution, reduced the value of their lands and their availability for investment. It has been held by eminent authority that the existence of illegal taxes, and the existence and enforcement of an illegal system of taxation against land, may constitute such a cloud on the title thereof as equity will remove. Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Raymond v. Chicago, etc., Co., 207 U.

S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757.

[7] Again, if the relief sought by plaintiffs were denied, while each of them and all persons similarly situated might successfully resist the payment of excessive taxes when demand for payment should be made by the city therefor, this would inevitably result in the prosecution of as many suits as there should be persons in the city whose property, under the system adopted, had been taxed at a higher value than the property of other citizens. The policy of our laws and of our courts is in opposition to the bringing of many suits where the validity of the act or acts which give rise thereto may be determined once and for all in one proceeding. Hence it has been held that, where a suit has been brought to restrain the assessment and collection of taxes illegally imposed, equity may interfere to prevent a multiplicity of suits. Cummings v. Bank, 101 U. S. 157, 25 L. Ed. 903; Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Raymond v. Chicago Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757. In the case first above cited it is said:

"We are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power."

[8] But what would be the result if it should be held that the pleadings and evidence in this case did not justify the interposition of a court of equity to restrain the exercise of the unconstitutional acts of the city and its taxing officers, because each of the complainants and all others similarly situated had an adequate remedy at law? It has been held in this state that, where different classes of property are systematically valued at different ratios of value for purposes of taxation, the law will restrain the collection of taxes from property on a higher ratio of value than as applied to other classes of property. Thus, in Lively v. Railway, 102 Tex. 552, 120 S. W. 852, where the railway company tendered the amount of taxes at a lawful rate on its intangible values proportioned to Dallas county on a value of two-thirds of its full value, that being the valuation generally used in the assessment of other property in that county, the court enjoined the collection of any more tax on the value of intangible property, notwithstanding a state statute required that taxes should be paid on intangibles at 100 per cent. valuation. The court, after stating that the facts of that case evidenced a deliberately adopted policy to discriminate between the different classes of property in the assessment of taxes, and that such discrimination

was forbidden by the Constitution and in contravention to section 1 of the fourteenth amendment of the Constitution of the United States, held that as, at the time the wrongful act was being done in that case, it was impracticable to increase the assessment of all property in Dallas county to the higher ratio, the courts, in administrating the remedy, would take the course that was most practicable to secure uniformity of valuation of the property to be taxed, and would enjoin the collection of taxes on any higher proportion of the full value of the railroad's property than was uniformly applied in that county to other classes of property.

Property of taxpayers generally in Hays county was assessed at a valuation of not exceeding 50 per cent. of full value, but the intangible values of a railway company were assessed at 100 per cent. of the full value. The railway company tendered payment of taxes on a 50 per cent. valuation and successfully resisted the collection of any larger amount. Railway v. Kone, 122 S. W. 424.

In Langley v. Smith, 126 S. W. 660, it was held that an assessment of national bank stock at 85 per cent. of its full value, while all other property subject to taxation was assessed at 41 per cent., is an inequality of taxation, and that the tax collector could be enjoined from collecting the tax based on such valuation.

[9] We gather from the cases cited, and others of the same character, that, where the property of a certain class belonging to one person is valued for taxation at a higher rate than property of a different class, the owner, by paying or tendering the amount of taxes that would be due on the lower valuation, may defeat the collection of the tax based on the higher. Ordinarily this would be an adequate remedy for persons in like position of complainants, where property generally was taxed at a fixed valuation, and that of the complainant was taxed at a higher, as in the cited case of Railway v. Kone. But could that remedy be availed of in this case without disastrous results to the city? Here there were three classes of property taxed, and each on a different ratio of value, viz.: Land at 70 per cent., merchandise at 50 per cent., and improvements on land at 25 per cent. Another class of property amounting to millions of dollars was not taxed at all, but in legal effect exempted from taxation by the deliberate plan and action or nonaction of the city and its taxing officers. If then the landowner might have avoided the payment of taxes in the full amount for which they were assessed by tendering a sufficient sum to pay the taxes assessed against the class of property carrying the lowest valuation, the city would probably be seriously embarrassed in its fiscal affairs by a failure to derive by taxation the necessary funds to pay the expenses of government. The facts of this case naturally suggest another question, viz.: If under the Constitution taxation is required to be equal and uniform, and all property is required to be taxed in proportion to its value, when the city by its deliberate purpose and plan omitted from taxation, and thereby virtually exempted, millions of dollars of taxable property of one class from taxation, are not all other persons who own property of the other classes entitled to the exemption of their property from taxation? This is a question, however, which is not necessary to a decision of this case, and we do not decide it.

[10] We now reach the question: Was the suit brought prematurely? It is our opinion that it was not, for the city has begun already to assess the values for 1915 by the same discriminating system, and, this being called by plaintiffs to the attention of the city council by a petition accompanied with a demand that such discrimination be discontinued in the taxes of 1915, the council declared that it would not discontinue such discrimination, but would continue the same for the year 1915. All this is alleged in the plaintiffs' petition, and the defendants, in reply thereto, say that unless restrained by the court they will value property for purposes of taxation by the same discriminating values which were used for different classes of taxable property in the year 1914. We think that this action was properly brought while the unlawful act is being done, and at a time when it can be corrected with the least inconvenience and injury, rather than that the action should have been delayed until the matter is completed to a point where it cannot be corrected at all or only with great difficulty and confusion. Relief can be granted now with effect, prohibiting the unlawful valuations before they are completed. But, if defendants are permitted to proceed until all the unlawful valuations are made and completed, then a case will have arisen where an extraordinary mandatory injunction will be required, commanding every valuation of property in the city to be remade, the effect of which will be to bring about a state of affairs so complex and difficult that the courts might be inclined to let the illegal acts stand, giving the taxpayers the right to pay taxes on the lowest valuation adopted. Lively v. Railway, 102 Tex. 545, 120 S. W. 852. And if it should be law (which we do not now so hold) that this last remedy, because of the omission and practical exemption from taxation of a large amount of a certain class of property, would have the effect of exempting all other classes of property from taxation (Hoefling v. San Antonio, 85 Tex. 230, 20 S. W. 85, 16 L. R. A. 608), and would therefore be impracticable, the refusal of the court to act now might produce direful consequences to the city, the extent of which cannot now be foreseen. Unless the relief prayed for by plaintiffs is

granted, the remarkable situation is presented that, where there is and can be no issue as to the right of defendants to continue in the unlawful discrimination, and where the essential facts are not denied, but admitted, the courts will not prohibit the continuance of the unlawful discrimination, though its aid is sought promptly, and before the unlawful acts were completed, on the invitation of the defendants, in order to have determined the legality of the acts complained of probably in time for same to be determined finally on appeal before the time had expired for the final valuation of property for the taxes of 1915, and that, too, when there can be no question that the city is without lawful right to do the things complained of.

[11] We think that the order of the court is sufficiently definite to be enforced, and that the apprehension of defendants in that regard is not well founded. The order does not trench in the slightest upon any discretionary powers of the city or of its taxing officers. It simply commands the city to observe the law which requires equality and uniformity of taxation, leaving it to the discretion of the defendants to fix for taxing purposes any per cent. of full values that they may deem expedient or proper.

[12] We do not think that the refusal of the court to permit Mr. Ring to intervene was such error as to require a reversal of the judgment. In his petition he did not seek the same relief prayed by plaintiffs, in that, while the plaintiffs sought only equality and uniformity of taxation, leaving it to the discretion of the taxing authorities to fix any per cent. of full value as a basis of taxation, Mr. Ring sought to have the defendants required to tax all property at 100 per cent. of its value, and to deprive the defendants of discretion in fixing a lower value for the purpose of taxation, although the values so fixed might result in equality and uniformity of taxation. Again, in his proffered petition of intervention, he sought to have the plaintiffs' case dismissed—a relief which he, as an intervening plaintiff, clearly had no right to ask.

[13] Again, this appeal being from an interlocutory order granting an injunction, from which an appeal lies only in virtue of a statute authorizing an appeal from such interlocutory order, and the only question which can be determined on such an appeal being whether the court properly granted the preliminary injunction on the petition filed, and Mr. Ring's intervention having never been filed, he has no right under said statute to appeal from the order refusing to permit him to intervene at this time.

We believe that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.