GRAYSON COUNTY OFFICIALS, Judge Les Tribble et al., Appellants,

v.

Billy DENNARD et al., Appellees.

No. 5228.

Court of Civil Appeals of Texas, Eastland.

Oct. 5, 1978.

Rehearing Denied Nov. 16, 1978.

Elvin E. Tackett, Bedford, Roger D. Sanders, Sherman, for appellants.

William B. Sullivant, Gainesville, Adrian M. Overstreet, Jr., Austin, for appellees.

DICKENSON, Justice.

Billy Dennard, O. M. Quattlebaum, James A. Clement, Patsy R. Clement, Charles B. Britt and Fred Watson (plaintiffs) sued the County Judge, County Commissioners and Tax Assessor-Collector of Grayson County (Grayson County Officials) on May 8, 1978, to permanently enjoin them from certifying the county tax rolls for 1978 until all taxable property was placed on the ad valorem tax rolls. Plaintiffs owned real property in the county, and they claimed that they would be harmed by having to pay more than their fair share of the ad valorem tax burden of Grayson County because of the failure to list all personal property subject to taxation on the tax rolls. This suit was

filed in the 59th District Court of Grayson County.

The Grayson County Officials filed a plea to the jurisdiction and to abate this case because of an earlier lawsuit which was filed against them (or their predecessors in office) by James R. Newman on August 17, 1970. Newman's petition alleged that the real property was taxed at a lower percentage of its market value than personal property and that the only remedy "for this deplorable situation" would be a complete, fair and uniform reassessment of the values of all property in the county. Newman's suit was filed in the 15th District Court of Grayson County. Judge Dee Brown Walker of Dallas was assigned to hear the case, and he signed an agreed judgment on November 17, 1972, which attempted to retain continuing jurisdiction of this cause "for whatever period of time is necessary to effectuate the necessary revaluation and reappraisal of all taxable property in Grayson County". Judge Dee Brown Walker was still supervising the reappraisal and revaluation in 1978 when the second lawsuit was filed.

Judge W. C. Boyd of Denton was assigned to hear the case which was pending in the 59th District Court. He overruled the jurisdictional plea and refused to abate the second lawsuit. He also refused to consolidate the second lawsuit with the case which had been filed in the 15th District Court. At the conclusion of a non jury trial, Judge W. C. Boyd made findings of fact which include the following: household furniture is not placed on the tax roll; automobiles more than six years old are not placed on the tax roll; money is not placed on the tax roll; even if an individual renders stocks and bonds, they are not placed on the tax roll; it has been the policy of the tax collector's office through renditions for the 1978 tax year to inform taxpayers not to render their household goods, money, stocks and bonds, as the same are not included in the tax rolls of Grayson County; no remedial contact has been made with any person whom the tax officer told not to render personal property; the taxes of the plaintiffs would be substantially lower if all

taxable property were placed on the tax roll; and the omission of taxable property from the rolls is the result of a deliberate, intentional and continuing plan.

Judge Boyd's conclusions of law include the following; the judgment in the Newman case became final in 1972; the 59th District Court has jurisdiction of the subject matter in this case and is the only court with such jurisdiction; the constitution and statutes of Texas require that money, stocks and bonds (except in Texas corporations) are taxable in Texas; the tax assessor in Grayson County failed to properly place all taxable property on the tax roll; the tax plan in this case, as formulated by the tax assessor-collector of Grayson County, is fundamentally erroneous in that it excludes intentionally and deliberately certain classes of taxable property; plaintiffs have been substantially harmed by the adoption of the tax plan in Grayson County; and plaintiffs have no adequate remedy at law.

Judgment was rendered by Judge W. C. Boyd on July 6, 1978, which decreed that the Grayson County Officials would be enjoined as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Defendants be and they are hereby perpetually enjoined individually and collectively from certifying the tax rolls of Grayson County until all classes of taxable property within Grayson County, and without exempting any class of taxable property (not exempted by the constitution and statutes of Texas) are placed thereon; IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, Tax Assessor-Collector, of Grayson County be and she is hereby perpetually enjoined to reconstitute the tax rolls of Grayson County and to include thereon all property in Grayson County, real, personal, or mixed except as may be expressly exempted by the constitution and statutes of the State of Texas . . ."

The Grayson County Officials filed a supersedeas bond and perfected their appeal.

**182**

The judgment of the trial court will be modified and affirmed.

■ The first point of error is that Judge W. C. Boyd erred in holding that the 59th District Court had jurisdiction, in refusing to abate, and in refusing to consolidate this cause with the Newman case which had been filed in the 15th District Court in 1970. This point of error is overruled. The agreed judgment in the Newman case was entered by Judge Dee Brown Walker on November 17, 1972, and it became final 30 days later. We hold that the controversies between those parties were settled by that judgment, and it will be deemed a final judgment. This is true even though further proceedings were required to carry the judgment into full effect. Such proceedings may be expressly provided for in the face of a judgment without affecting its finality, provided they are merely incidental to its proper execution. *Hargrove v. Insurance Inv. Corporation*, 142 Tex. 111, 176 S.W.2d 744 (1944); *Schwartz v. Jefferson*, 520 S.W.2d 881 (Tex.1975); *Jamison v. City of Pearland*, 520 S.W.2d 445 (Tex.Civ.App. —Houston (1st Dist.) 1975, no writ); *Moody v. State*, 520 S.W.2d 452 (Tex.Civ.App.— Austin 1975, no writ); *Starkey v. Holoye*, 536 S.W.2d 438 (Tex.Civ.App.—Houston (14th Dist.) 1976, writ ref'd n. r. e.); and *White v. Parr*, 538 S.W.2d 234 (Tex.Civ. App.—San Antonio 1976, writ ref. n. r. e.).

■ Judge Dee Brown Walker's post-judgment supervision of the Grayson County revaluation and reappraisement is not before us, and we will say only that the plaintiffs' cause of action in this case was not subject to abatement or consolidation with those proceedings.

The second point of error is that Judge W. C. Boyd erred in rendering the order which perpetually enjoined the Grayson County Officials from certifying the tax roll for 1978 until all classes of taxable property are placed thereon and in perpetually enjoining the Tax Assessor-Collector to reconstitute the tax rolls to include all taxable property in the county. The injunction is overly broad. A less sweeping remedy will be sufficient to protect the rights of the named plaintiffs in this lawsuit.

■ The remedies which are available to protect taxpayers who complain of unfair ad valorem taxation, and the burden of proof required of them, depend upon when the taxpayers file their suit. If the suit is filed before the tax rolls are certified, taxpayers have a lower burden of proof. They also have the possibility of securing an injunction against a defective tax system. If the taxpayers wait until the tax roll is certified, they face a higher burden of proof and are not entitled to an injunction against the tax system. *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414 (1954) recognized the right to relief from an arbitrary plan of taxation; however, Chief Justice Calvert points out on page 416 of that opinion:

> " . . . if the taxpayer fails to avail himself of the remedies of mandamus and injunction to prevent a taxing authority from putting such a plan into effect, as those remedies were used in such cases as *City of Houston v. Baker*, Tex.Civ.App., 178 S.W. 820, writ refused, and *City of Wichita Falls v. Cooper*, Tex.Civ.App., 170 S.W.2d 777, writ refused, his right to relief is limited. . . . Once such a plan is put into effect the litigant may defeat the recovery of taxes only to the extent that they are excessive and he must assume the burden of proving excessiveness. . . ."

*City of Houston v. Baker*, 178 S.W. 820 (Tex.Civ.App.—Galveston 1915, writ ref'd) was a precertification attack by the taxpayers. The court found that the City intentionally omitted household goods, money, stocks, bonds, mortgages, notes, credits and other similar personal property from the tax rolls. The City taxed land at 70% of its full value, improvements at 25% of full value, and merchandise at 50% of full value. The City's tax plan violated the provision of the constitution which demands uniformity of taxation and which requires that all property be taxed in proportion to its value. The evidence showed that a large class of individuals would be directly injured by the

City's illegal tax plan. The court held that the action was not brought prematurely. The court recognized on page 825 of its opinion that after the valuations were made and completed:

".  .  . then a case will have arisen where an extraordinary mandatory injunction will be required, commanding every valuation of property in the city to be remade, the effect of which will be to bring about a state of affairs so complex and difficult that the courts might be inclined to let the illegal acts stand, giving the taxpayers the right to pay taxes on the lowest valuation adopted .  .  ."

We note that the City of Houston expressly admitted that its tax plan was illegal, that it was deliberately adopted, and that it would be adhered to unless forbidden by the courts. The Grayson County Officials have taken a different posture. They have undertaken a revaluation and reappraisal of tax property in response to an agreed judgment in the prior taxpayer lawsuit. During the trial of the present case, the Tax Assessor-Collector promised to do the best that she could to place all taxable property on the tax rolls.

*City of Wichita Falls v. Cooper,* 170 S.W.2d 777 (Tex.Civ.App.—Fort Worth 1943, writ ref'd) was also a precertification attack by a taxpayer. The City had adopted a municipal ordinance to exempt $3,000 of assessed taxable values on all residence homesteads in the City. The court held that the constitutional provision relating to exemption of homesteads from taxation was clearly limited to taxes for State purposes. The court held that the City had not only the right, but also the duty, to tax the homestead for City purposes. The court held that the trial court was correct in holding the municipal ordinance void and in issuing a permanent injunction to restrain the City from exempting homestead property from taxation.

We note that the injunction against the City of Wichita Falls did not require them to search out other properties, but merely to cease the issuance of exemption certificates on residential homesteads.

*Atlantic Richfield Company v. Warren Independent School District,* 453 S.W.2d 190 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.) is a fairly recent precertification attack on a defective ad valorem tax plan. Justice Keith discusses the difference between precertification and postcertification attacks on defective ad valorem tax plans. Atlantic Richfield and others contended that the Board of Equalization, in each of the years involved, adopted a fundamentally erroneous plan of taxation which resulted in their substantial injury. The taxpayer plaintiffs secured jury findings in support of various factual aspects of their theory. The school district secured a finding from the jury that the Board made a good faith effort to fairly and honestly assess all taxable property within the District at a fair, just, equal and uniform valuation for taxing purposes. The trial court's judgment for the school district was reversed, and judgment was rendered, ".  .  . setting aside, vacating and holding for naught the assessments upon plaintiffs' properties in said District for each of the years involved. This judgment, however, is without prejudice to the right of the District to again assess and value plaintiffs' properties in accordance with law and to collect such taxes as may be due thereon .  .  .  ."

Our Supreme Court pointed out in *Republic Ins. Co. v. Highland Park Independent School Dist.,* 141 Tex. 224, 171 S.W.2d 342 (1943) that:

".  .  . Assessing and equalizing taxes are not functions of the courts. *Electra Independent School District v. W. T. Waggoner Estate,* 140 Tex. 483, 168 S.W.2d 645. Therefore, the trial court was correct in rendering judgment for the petitioner. However, we affirm that judgment on the sole ground that the assessment is void, and we reform it to show that it is rendered without prejudice to the right of the respondent again to assess and value the property in accordance with law and to collect such taxes as may be due thereon.  .  .  ."

Our Supreme Court also discussed ad valorem taxation at some length in the case of *Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378 (1955). Chief Justice Calvert states at page 382:

". . . We full well realize the practical difficulties and problems to be encountered in taxing bank deposits, but to hold that they are not taxable would require us to fly in the very face of the Constitution and the Statutes of this state. This no court is at liberty to do.

". . . It is not for taxing authorities to decide what property shall escape taxation; that right lies alone with the people in the writing of their Constitution and with the Legislature in the enactment of laws. . . .

. . . But petitioners do not seek to escape the payment of taxes; they seek only to require a revision of the assessed valuations of their property so that they will be required to pay only the amount that is justly due and owing. . . ."

*State v. Federal Land Bank of Houston,* 160 Tex. 282, 329 S.W.2d 847 (1959) also discusses the burdens placed on a taxpayer who challenges an ad valorem tax plan. This case makes clear the distinction between a precertification challenge and a postcertification challenge. The Federal Land Bank failed to challenge the plan before the tax rolls were certified. Even though the Supreme Court found that the Federal Land Bank had proved an arbitrary and illegal scheme of ad valorem taxation, it failed to prove substantial injury. Chief Justice Greenhill sets forth the law as follows:

". . . The deliberate adoption of a plan for the omission from the tax rolls of a large volume of property, personal or real, is in direct contravention of constitutional and statutory provisions for equality and uniformity of taxation. . .

"But while the Land Bank did prove an arbitrary and illegal scheme of ad valorem taxation, that fact alone under the facts here does not of itself entitle it to relief. This is not a direct attack on the scheme of taxation or a suit to prevent the initiation or operation of an illegal scheme. No relief was sought by mandamus or injunction. Here the taxpayer sat by and allowed the plan to be put into operation without even a suggestion of a protest, objection, or appeal. The County and the other taxpayers have proceeded under the plan. The point is made only after the county-wide valuations have been fixed and adjusted in the board of equalization, the taxes levied, assessed, and presumably paid by the other taxpayers in the county. Under those circumstances, the Land Bank must assume a very heavy and onerous burden.

"The government does not lose its right to taxes on one parcel of property by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable. Once such a plan is put into effect, the litigant may defeat the recovery of taxes only to the extent that they are excessive; and he must prove the excessiveness. *City of Arlington v. Cannon,* 1954, 153 Tex. 566, 271 S.W.2d 414. When the attack is made because the taxing authority has followed an arbitrary plan or scheme, the taxpayer, to prevail, must show not only that the plan was an arbitrary and illegal one but also that the use of the plan worked to his substantial injury. *State v. Whittenburg,* 1954, 153 Tex. 205, 265 S.W.2d 569.

"The difficulties to be encountered in making the necessary proof as a basis for relief is the penalty the taxpayer must pay for sitting idly by while taxing authorities put into effect a plan of taxation which deliberately permits certain classes of property to escape taxation. *City of Arlington v. Cannon,* supra.

"In cases previously before this Court, proof of substantial injury has been held to mean that the taxpayer must prove that his taxes are excessive or substantially higher by virtue of the omission of the taxable property and the failure to assess taxable property at its market value. *Whelan v. State,* supra; *State v. Whittenburg,* supra. As stated by Judge

Brown of the Fifth Circuit after reviewing the Texas cases, 'It must finally be translated into hard dollars out of the complaining taxpayer's pocket.' ' * * * no matter how much it (the tax plan) violates the State Constitutional pattern, the only relief of a taxpayer defending delinquent tax suit is to show in dollars that he is worse off.' *City of Orange, Texas v. Levingston Shipbuilding Co.,* 5 Cir., 1958, 258 F.2d 240 . . . ."

■ In this lawsuit, plaintiffs did not sit idly by. They have sued to enjoin the Grayson County Officials from putting into effect an ad valorem tax plan which the trial court has found to be fundamentally erroneous. The trial court has also found that the taxes of plaintiffs would be substantially lower if all taxable property were placed on the tax rolls. Plaintiffs are entitled to relief, but we hold that the injunction of the trial court was overly broad in blocking the certification of the tax rolls as to every taxpayer in Grayson County, Texas. Relief such as that granted in *Atlantic Richfield Company v. Warren Independent School District,* supra, would appear to be appropriate. That was also a precertification or direct attack where the taxpayers prevailed, but the relief was limited to the assessments upon those plaintiffs' properties for the two years involved in that direct attack (separate suits had been filed in 1967 and 1968, but they were consolidated prior to trial on the merits), and the relief granted was without prejudice to the right of the taxing authority to again assess and value those plaintiffs' properties in accordance with law and to collect such taxes as may be proper.

Rule 683, T.R.C.P., provides in part that:

"Every order granting an injunction . . . shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained . . . ."

■ An injunction must be definite, clear and concise. It should leave nothing for further hearing and decision. *Young v. Hicks,* 559 S.W.2d 343 (Tex.1977); *West Texas Utilities Co. v. Haskell County,* 490 S.W.2d 237 (Tex.Civ.App.—Eastland 1973, no writ). An injunction decree should inform the defendants of the acts they are restrained from doing, without calling on them for inferences or conclusions about which persons might well differ. The decree must not be so broad as to enjoin the defendants from activities which are lawful and which are a proper exercise of their rights and duties. *Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871 (1948).

■ As pointed out in *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943), if a point of error is sufficient to direct the court's attention to the matter complained of, the court can look to the point of error and the statement and argument to determine the question. Rule 418(d), T.R.C.P., provides that such points will be sufficient if they direct the attention of the court to the error relied upon. Rule 422, T.R.C.P., indicates that the briefing rules are to be liberally construed. We hold that the second point of error, when liberally construed, is sufficient to direct the court's attention to the fact that the injunction was overly broad.

The injunction paragraph (which is quoted hereinabove) in the judgment entered by Judge W. C. Boyd on July 6, 1978, will be modified to read as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants be, and they are hereby, enjoined from certifying the 1978 tax rolls of Grayson County as they are presently constituted, as to Billy Dennard, O. M. Quattlebaum, James A. Clement, Patsy R. Clement, Charles B. Britt and Fred Watson and IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendants may certify the 1978 tax roll as to all other taxpayers in the county and proceed with collection of the 1978 ad valorem taxes."

■ The third point of error claims that there was no evidence to support the trial court's finding that it was the plan of Grayson County to deliberately and intentionally omit personal property from taxation. We

disagree. The fourth point of error is that such finding was against the great weight and preponderance of the evidence. We disagree. We have reviewed the entire record, and we hold that this finding is not against the great weight and preponderance of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). The plaintiffs have met their burden of proof on this precertification attack on the tax plan, and they are entitled to relief. *City of Houston v. Baker,* supra.

The fifth point of error contends that the trial court erred in granting plaintiffs a remedy that prevents the Grayson County Officials from assessing an ad valorem tax against some 50,000 taxpayers when the plaintiffs' attorneys stated at the beginning of the trial that they had no intention for this to be a class action suit. We agree that the injunction should be modified as indicated hereinabove. *Atlantic Richfield Company v. Warren Independent School District,* supra. Where proof of excessiveness or of substantial injury is required as a prerequisite to granting of relief, that proof must be made as to each taxpayer who seeks relief. The injunction cannot stand as to the other taxpayers in the county. *Sierra Blanca Independent School District v. Sierra Blanca Corporation,* 514 S.W.2d 782 (Tex.Civ.App.—El Paso 1974, writ ref'd n. r. e.); *Bynum v. Alto Independent School District,* 521 S.W.2d 656 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.).

As modified, the judgment of the trial court is affirmed. All court costs are taxed one-half against plaintiffs and one-half against the Grayson County Officials. *City of Arlington v. Cannon,* supra.

## ON APPELLANTS' AND APPELLEES' MOTIONS FOR REHEARING

On November 8, 1978, the Supreme Court delivered its opinion in an original mandamus proceeding which involved the Grayson County tax rolls. In that opinion, the Supreme Court held that the agreed judgment which Judge Dee Brown Walker rendered on November 12, 1972, became final thirty days after its rendition; that his jurisdiction to hear tax controversies in Grayson County ended on that date; and that any orders issued by him after that date are void. *Case v. Honorable Dee Brown Walker, Judge,* 573 S.W.2d 513 (Tex.1978).

■ In appellants' motion for rehearing, the Grayson County Officials assert for the first time that the State of Texas, Grayson County, Pottsboro Independent School District, Tioga Independent School District, Choctaw Watershed District, and Grayson County Junior College are indispensible parties. This point was not raised in the trial court, nor was it raised in the original briefs in this court. We hold that those parties were not indispensible parties under Rule 39, T.R.C.P. Their absence did not deprive the trial court of jurisdiction to adjudicate between the parties who participated in the proceedings. *Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200 (Tex. 1974).

Both motions for rehearing are overruled.