### ROWLAND v. CITY OF TYLER et al.
#### (No. 915—4995.)

Commission of Appeals of Texas, Section B. May 2, 1928.

**1. Taxation ⬚⟹49—Taxing power of municipalities is subject to constitutional requirement that property be taxed in proportion to value (Const. art. 8, § 1).**

Cities exercising taxing power are subject to provisions of Const. art. 8, § 1, requiring uniformity of taxation and taxation in proportion to value of property, to be ascertained as provided by law.

**2. Taxation ⬚⟹49—Property must be taxed in proportion to reasonable cash market "value" (Const. art. 8, § 1).**

"Value" of property in proportion to which property must be taxed under Const. art. 8, § 1, means the reasonable cash market value thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Value.]

**3. Taxation ⬚⟹49—Adoption of fundamentally wrong scheme by which values are arbitrarily determined for purpose of taxation violates Constitution (Const. art. 8, § 1).**

Adoption by board of equalization of plan or scheme for determining value of property, which is fundamentally wrong and by which values are arbitrarily determined, violates Const. art. 8, § 1, requiring taxation of property in proportion

---

⬚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to its value, since reasonable cash market value is true criterion.

**4. Taxation ⊜⊃49—Determination of value of property for purpose of fixing tax involves consideration of rentals, original cost, location, improvements, rental history, and sales of adjacent property (Const. art. 8, § 1).**

Determination of value of property for purpose of making assessment for taxes under Const. art. 8, § 1, involves determination of several elements, including amount of rental, original cost of property, location, cost and character of improvements, rental history, location as to future growth of city, and sales of adjacent property.

**5. Taxation ⊜⊃490—Assessment of board of equalization, though excessive or mistaken, is generally conclusive, in absence of fraud or illegality.**

Decision of board of equalization upon a particular assessment, in absence of fraud or illegality, is not subject to review by the courts, even though excessive or involving mistake, providing board fairly and honestly endeavors to reach a correct valuation.

**6. Taxation ⊜⊃49—Arbitrary determination of value of property by multiplying amount of rentals by 10 and taking 65 per cent. of such sum as value held to render assessment for taxes void (Const. art. 8, § 1).**

Assessment of property for taxes by board of equalization by arbitrary determination of value by multiplying amount of rental by 10 and taking 65 per cent. of such amount as constituting reasonable cash market value *held* to violate Const. art. 8, § 1, requiring taxation of property in proportion to its value.

**7. Taxation ⊜⊃610—Where pleadings in taxpayer's injunction suit merely raised issue of illegality of increase of assessment, finding that taxpayer's tender of taxes, based on original assessment made by her, was sufficient held not error.**

In taxpayer's injunction suit to restrain collection of taxes illegally assessed, in which pleadings merely authorized the court to declare the action of the board of equalization in raising assessment on property illegal, action of trial court in holding that taxpayer's tender of taxes, based upon value of property as it had been assessed by her, was sufficient *held* not error.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by Meta Rowland against the City of Tyler and others. Judgment for plaintiff was reversed and rendered by the Court of Civil Appeals (297 S. W. 923), and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

T. B. Ramey, Jr., of Tyler, for plaintiff in error.

Troy Smith, of Tyler, for defendants in error.

LEDDY, J. The sole question presented for determination in this case is whether the action of the board of equalization of the city of Tyler in placing a valuation upon the property of plaintiff in error was unlawful. The insistence is made that the evidence conclusively establishes that such valuation was ascertained pursuant to a definitely prescribed plan of procedure, wherein the estimated rental returns of said property were arbitrarily made the controlling and decisive factor in determining such valuation.

The trial court's findings of fact upon this issue are as follows:

"I find that the said board of equalization determined upon a fixed plan or course of procedure for arriving at and fixing valuations for the purpose of taxation for the year 1926, upon all rental business property in the city of Tyler, Tex., in the following manner: The amount of monthly rental which such property was bringing in the month of January, 1926, was ascertained and such amount was multiplied by 12 for the purpose of estimating the gross annual revenues of said property for the year 1926. Such sum was then estimated to represent 10 per cent. of the actual value of such property, which was thus calculated to be 10 times the amount of the estimated annual revenues. Thereupon the valuation of such property for taxation purposes was fixed at 65 per cent. of such estimated total valuation.

"I find that the valuation placed upon plaintiff's property for taxation by the city of Tyler for the year 1926 was arrived at and determined in accordance with the foregoing plan or scheme, and that such plan was the controlling factor which governed the action of the board of equalization in increasing the valuation of plaintiff's property from the sum of $14,600 to the sum of $23,400."

Mr. Swann, who appeared before the board of equalization in behalf of plaintiff in error, testified:

"I appeared before the equalization board with reference to a revision of the assessed valuation of this property at the instance of Miss Meta Rowland. I don't know what dates it was that I appeared. It was while the board of equalization was in session. It was the week that they notified us to appear. I appeared at the time she was notified. There were present Mr. Hicks, Frank Williams, John Bailey, Shelton, and a lady stenographer—five of them. No one else was present. When I first got in there, Mr. Hicks explained to me this new method they were using to arrive at the valuations, this rental basis; that was the only way they were arriving at the valuation. Mr. Hicks explained to me that it was according to monthly rental and annual rental; annual rental would be 10 per cent. of the value of the property. In other words, a building renting for $300 a month, they would figure it at $36,000. Then 65 per cent. of that would be taken for taxes. I objected to that; told them I thought it was unfair. I further objected because I told them this particular piece of property wasn't worth anything like that much money, $36,000. I explained to them why; that it was in very bad

repair the 1st of January. I don't know whether I said anything to them about the prospective rental revenue of the property or not. They asked what rent the property was bringing, but they already knew; already had that down. I don't remember whether they said so or not, but I know they went around and checked up on everybody as to how much rent they were getting. They asked me how much rent Miss Meta was getting. They did that at that particular time when I was before them. I told them she was getting $300 a month. I think the calculation they made from that rental was about $23,600 or something like that. In other words, it was 65 per cent. of $36,000. I did not agree to that. I told them I thought it was unfair and wrong method to use, and that the property wasn't worth anything like that much money. There wasn't much argument to it. They invited me out in a way in a very short time. Mr. Hicks told me, 'We are through with you; good bye.' I don't think there was any testimony or evidence introduced as bearing on the value of the property. Nothing was asked me with reference to the condition of the building. I told them, but they didn't consider that at all. I volunteered that. I gave them that information. They said they wouldn't consider that because they were using this plan altogether for everybody and would consider nothing else."

Plaintiff in error detailed what occurred when she appeared before the board of equalization as follows:

"I appeared in person before the equalization board for the city of Tyler for the year 1926 with reference to the assessed valuation upon this property. After Mr. Swann didn't seem to have results, then I went down. I went alone. When I was there, just the equalization board and myself were there. I don't recall whether Mr. Shelton was there or not. My conversation was wholly with Mr. Hicks, who seemed to be the spokesman for the crowd, and I protested, saying that I had been informed that my building was vacant, and as yet I had no renter, and the building was old, and I knew I would have to have quite a good deal of repairs, and it wasn't necessary for me to tell him how much rent I was getting. It seems as though he was informed on that subject before I went, but it was wholly on the rental that I was getting that I was being taxed. He told me it was on the rental I was getting. I don't recall anything else that was said. I protested—didn't accept it because I felt it wasn't fair."

S. A. Shelton, city tax assessor and collector, who assisted the board of equalization in their work, testified:

"I was present when the equalization board considered and discussed the rendition of such property for taxation purposes as rendered by Miss Meta Rowland. I was present when an increase of such rendition was ordered by the board of equalization. The assessed valuation for the purpose of taxation of such property was increased at the instance of the board of equalization for the year 1926 to $23,400. The amount set in red ink, $14,620, opposite that is the amount at which the property was rendered by Miss Rowland. In causing that increased valuation to be placed upon that property for taxation purposes, it was understood that $23,400 was to represent 65 per cent. of the actual market value of the property.

"The method pursued by the equalization board, or the gentlemen who were acting upon it as the equalization board, was about as follows: The members of the board inquired or ascertained the amount of rent that was being obtained from such property the first of the year 1926, say for the month of January, 1926, and then multiplied that by 12 to get the annual rent for the property for such year, and after ascertaining such annual rental by such method they then estimated that such amount would represent 10 per cent. of the total value of the property and added nine-tenths in addition to such amount to arrive at the total value of the property and then raised the valuation for taxation purposes to an amount equal to 65 per cent. of such total valuation as estimated. They used that as a basis to arrive at values to some extent. They used that method in this instance in reaching this figure, $23,400. I don't recall what amount the rent was stated to have been received by Miss Rowland for such property for the month of January, 1926. I don't recall the actual figures. I just remember the method used. That method or plan was adopted by those gentlemen serving as the board of equalization to apply for the year 1926 in reaching a valuation for taxation purposes on all rental business property in the city of Tyler. In other words, the gentlemen who sat as the board of equalization for the year 1926 for the city of Tyler in each instance would inquire the amount of rent that the building or the premises were bringing for January, 1926, and then on that basis estimated it for 12 months, arriving at the total rental revenue for the year, and then let that represent 10 per cent. of the value of the property, and took 65 per cent. of the total value for taxation purposes. That is the method that they pursued with reference to all business rental property in the city of Tyler, for the year 1926. It is a fact that they told Mr. Swann and Miss Rowland that the basis upon which the property was going to be assessed was on the basis of the rents, in the manner I have gone into. They told Mr. Swann and Miss Rowland that in my presence. They used that as a basis. The valuation of $23,400 placed on the property does represent a valuation calculated on the basis of rents in the manner that we have heretofore discussed.

"I should say that the method adopted in fixing the valuations on those pieces of property was on the basis of the rents. I couldn't say whether Mr. Hicks so stated to all those different parties or not. I couldn't be positive about just how broad he made it in every case. It was my understanding that that was the general method adopted, the rental method. No specific amount of assessment was arrived at on Miss Rowland's property until the second meeting of the board when Mr. Swann came before them. In other words, no raise was made until Mr. Swann appeared and told them what the rent would be, and then the calculation was made and the increased assessment was entered at that time. If there was any discussion as to the amount of increase prior to that time, it was just in a general way and no specific amount was mentioned at the prior meeting."

The testimony of Mr. A. Hicks, the chairman of the board of equalization, contains this admission:

"When Miss Rowland and Mr. Swann came down before the equalization board to see about this matter, we told them we wanted to know what the rent was and that we were fixing the assessed valuation on that basis and didn't want to hear and consider anything else because we had figured that was the value of the property. * * * That was the method we adopted. That was our idea of getting at the true value of all the properties."

This witness further testified that all of the business property within the city of Tyler was fixed according to the methods adopted of rental values, with the exception of the Arcadia Theater. It seems this building was excepted for the reason that the rental of $700 per month, which was being paid, included the installation of expensive fixtures which would really lessen the value of the building for any other rental purpose.

This witness further testified:

"All the other pieces of property we did assess on the basis of our calculations based on the rent with the exception of the Arcadia picture show. * * * The rest of the buildings, regardless of what we might have thought the location was or improvements, in the final analysis the assessment we made, was calculated according to its rental returns. We found that the location and all governed the rent. * * * In the final analysis, it was the rent that we fixed it on.

"Before we fixed the assessed valuation on any of the business property around town this year, we didn't first necessarily ascertain the amount of rent that the particular piece of property was bringing. We considered where the property was and what it was. Instead of first, it was last that we ascertained the rent. We got all the information we could, and the rent was part of the consideration. When we finally came down to calculating the assessed valuation, we did not let the rents control the figures entirely, but we did in practically every instance as far as business property was concerned. We did in Miss Meta Rowland's instance. In other words, we made out her annual rent at $3,600 for the year 1926. We got that estimate on the basis of what she was getting for the month of January. Of course, we didn't know then whether the building would be rented all of 1926 or not, but we estimated that it would be. When we got that $3,600 estimated annual rental, we fixed that as 10 per cent."

Similar testimony was given by F. E. Williams, also a member of the board of equalization, as follows:

"We assessed Miss Rowland's property at the value of $23,400. We arrived at those figures by taking the rental value per month and multiplying that by 12 and let that represent 10 per cent. of the gross-value and then took 65 per cent. of that for the assessed valuation. There were some exceptions, but that was the general rule we used in arriving at the assessed valuation of the rental business property. Even though we might have discussed the location and condition of the property, in Miss Row-

land's case the controlling factor was the revenue."

Mr. J. L. Bailey, the other member of the board, gave testimony of similar import as to the matters given consideration in fixing the valuations by the board. He stated:

"In fixing the values that we fixed for Miss Rowland's property and other property similarly located, we took as a basis the rent that the property was bringing to arrive at the value of the property. * * * The way we calculated our assessments was on the basis of the rents for the year 1926. All we inquired into was what revenue it was bringing, and then on that basis we calculated the assessed valuation."

We think it conclusively appears from the evidence that the board of equalization adopted a fixed plan or standard by which the value of business property in the city of Tyler was arbitrarily determined. It is true, members of such board testified that at the time they fixed the values they had in mind other matters, such as location, improvements, etc., but each member of the board admitted that, in the final analysis, the plan of determining the valuation by the amount of the rental the property produced in the preceding year was decisive and controlling. In view of such admissions, the fact that the members of the board had other matters in mind at the time the values were determined becomes wholly immaterial. It affirmatively appears such matters did not control, influence, or in any way affect the valuations finally arrived at. That the amount of rentals was the determinative and controlling factor clearly appears when we consider the testimony of the chairman of the board of equalization, which, in deference to the judgment of the trial court, must be accepted, to the effect that all business property in the city of Tyler was valued by the plan adopted with one exception, and this was made because of an unusual condition peculiar only to that particular piece of property.

Assuming, then, that the value of plaintiff in error's property has been fixed as found by the trial court, the legal question is presented, Does such method of assessment render illegal the valuation placed upon said property?

It is insisted on behalf of the plaintiff in error that such method of valuing the property contravenes the provision of article 8, § 1, of the Constitution, which provides as follows:

"Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

[1] Cities exercising the taxing power are subject to the above provisions of the Con-

stitution. City of Austin v. Austin Gas-Light & Coal Co., 69 Tex. 180, 7 S. W. 200; Garza Land & Cattle Co. v. Redwine Independent School Dist. (Tex. Civ. App.) 282 S. W. 906; Town of Pleasanton v. Vance (Tex. Com. App.) 277 S. W. 89.

[2] It is well established that the term "value," as used in the Constitution, means the reasonable cash market value. Lively v. M., K. & T. Ry. Co., 102 Tex. 545, 120 S. W. 852; City of El Paso v. Howze (Tex. Civ. App.) 248 S. W. 99; Porter v. Langley (Tex. Civ. App.) 155 S. W. 1042; Power v. Andrews (Tex. Civ. App.) 253 S. W. 870; R. C. L. vol. 26, p. 244.

[3] If, as is held, the reasonable cash market value is the true criterion, then it follows that if a board of equalization adopts a plan or scheme which is fundamentally wrong by which values are arbitrarily determined, then the plain provision of the Constitution has been violated.

[4] It cannot be doubted that the amount of rental a particular piece of property produces is an important element to be considered in fixing the value of that property. It is likewise true that there are a number of other elements which necessarily enter into the value of any particular piece of property, such as original cost, location, cost and character of improvements, rental history, location as to future growth of the city, sales of adjacent property, etc. To use any one particular element as the sole standard by which to fix the value of all property is fundamentally wrong, and, in the very nature of things, prevents the ascertainment of the value contemplated by the Constitution. In many instances, the amount of rentals would be wholly misleading as applied to value, and a value fixed solely by such method would not approximate the real value. Long-time rental contracts may be made in boom times or in times of depression, and if the amount of rental under such contracts were made the sole and determinative factor in fixing the value of the property covered thereby, the valuation arrived at by such plan would not represent a fair value either to the city or to the taxpayer. Again, many rental contracts are excessive because of bad business judgment on the part of the lessee, and for this reason could not properly be used as the decisive and controlling factor in fixing the values.

[5] As a general rule, the decision of a board of equalization upon a particular assessment, in the absence of fraud or illegality, is conclusive. Cooley on Taxation (2d Ed.) p. 218. Such valuation cannot be set aside merely upon a showing that the same is, in fact, excessive. If the board fairly and honestly endeavors to reach a correct valuation, a mistake upon its part under such circumstances is not subject to review by the courts. Sunday Day Iron v. Wakefield, 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154; Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493.

[6] Our Supreme Court, in the last-named case, declared under what circumstances the judgment of a board of equalization may be attacked, giving, among others, "the adoption of a fundamentally wrong principle or method, the application of which substantially injures the complainant." In this case, it is shown that the plaintiff in error rendered her property, a business house in the city of Tyler, for $14,300, and that the valuation was raised to $23,500, the same being arrived at by figuring 65 per cent. of the value determined by the amount of rentals produced on the basis of the plan adopted by the board of equalization. By the operation of this plan the value of her property was found to be $36,000. The trial court found under the evidence that the reasonable fair cash market value of the property was $7,500 less than this sum. It therefore affirmatively appears that the plaintiff in error has suffered an injury because of an excessive valuation of her property brought about through the adoption by the board of equalization of a method of fixing valuations by an illegal and arbitrary scheme, instead of using the lawful method of giving full and fair consideration to all proper elements which should be considered in arriving at the true value of the property.

In the case of Ogburn v. Ward County Irrigation District (Tex. Com. App.) 280 S. W. 169, it was shown that the board of equalization had arbitrarily subdivided the real property in the irrigation district into zones and placed the same value per acre upon all property which was situated in the same zone, disregarding the character of the land or the nature of the improvements thereon. The Commission of Appeals held, and the holding was expressly approved by the Supreme Court, that such action on the part of the board was in violation of the constitutional provision that property should be taxed in proportion to its fair value, and that taxation should be equal and uniform.

The Supreme Court of the United States, in the case of Johnson v. Wells Fargo & Co., 239 U. S. 234, 36 S. Ct. 62, 60 L. Ed. 243, held illegal the action of the state board of equalization valuing the property of the express company based upon its gross earnings. It appears that the Constitution of South Dakota contained a provision similar to that in the Constitution of Texas, to the effect that all property should be taxed uniformly and in accordance with the true value thereof. In discussing the illegality of the method adopted by the board of equalization, the court, speaking through Mr. Justice Day, said:

"The stringent provisions of the Constitution of South Dakota, then in force, required the adoption of a rule of valuation, as near as

might be, of like character in assessing individual and corporate property in the state, and here, the record shows, the valuation of the property of the express companies was based principally upon their gross incomes, determined by the method already described. Such administration of the statute would be illegal, although the law upon its face be unobjectionable."

The courts have frequently, and we think properly, condemned the action of boards of equalization in taking any one particular element as a rigid standard by which values of real estate shall be determined. The true value of real estate cannot be arrived at unless equalization boards give consideration to all proper elements that are determinative of the market value thereof. The decision in the case of People ex rel. Fitchburg Railroad Co. v. Haren, 50 Hun, 605, 3 N. Y. S. 86, clearly states the true rule that should guide such boards in valuing real estate for purposes of taxation, wherein it is said:

"Many considerations must have a share in determining this value. Among them are actual sales of the property, or of similar property, and the earning capacity of the property itself. No one consideration is conclusive. All may be properly taken into account. Sometimes houses of large cost will rent for only a small interest on their cost and on their value in the market. Other kinds of real estate may bring a large income upon their cost and on their value in the market. So that to take the earning capacity as the sole measure would be incorrect, while yet it may properly have its influence."

To the same effect are the cases of M. L. & T. Co. v. Board of Reviewers, 41 La. Ann. 1156, 3 So. 507; American Bauxite Co. v. Board of Equalization, 119 Ark. 362, 177 S. W. 1151; Power v. Andrews (Tex. Civ. App.) 253 S. W. 870; Allen v. Emery Ind. School Dist. (Tex. Civ. App.) 283 S. W. 674; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71.

[7] Finally, it is insisted by the defendant in error that the tender made by the plaintiff in error of $365 in payment of the taxes, based upon the value of the property as it had been assessed by her, was insufficient, in view of the court's finding that the actual value of her property was in excess of the amount rendered for taxation, based upon the 65 per cent. proportion upon which all other property was assessed. We do not deem it necessary to determine the question as to the power of the trial court to revise an assessment made by the taxpayer, for the reason that the issue sought to be presented was not made by the pleadings. In the state of the pleadings, the court was not authorized, if it had the power to do so, to do any more than declare unlawful the action of the board of equalization in raising the assessment of plaintiff in error's property. In this state of the record the original assessment of the property made by plaintiff in error determined the amount of tax due by her. Hence the action of the trial court holding that she had made sufficient tender is not erroneous.

Accordingly, we recommend that the judgment of the Court of Civil Appeals be reversed and the judgment of the trial court affirmed.

GREENWOOD and PIERSON, JJ. Judgment of Court of Civil Appeals reversed, and that of the district court affirmed.