# DALLAS COUNTY ET AL V. DALLAS NATIONAL BANK, TRUSTEE.

No. 8176. Decided March 22, 1944.
Rehearing overruled April 19, 1944.
(179 S. W., 2d Series, 288.)

*Dean Gauldin*, Criminal District Attorney, *H. Pat Edwards* and *Warren S. Cook*, Assistants District Attorney, all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the assessment against complainant's property was void, because said tax payer did not prove any fraud, or the adoption of wrong princi-

ples or methods, or an intentional violation of the essential principles of uniformity, nor did they assess same in excess of its fair market value. State v. Chicago, R. I. & G. Ry. Co. 263 S. W. 249; 40 Tex. Jur. 138; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350; Republic Ins. Co. v. Highland Park Ind. Sch. Dist., 133 Texas 545, 125 S. W. (2d) 270.

*Hamilton, Lipscomb, Wood & Swift,* of Dallas, for respondents.

Plaintiff trustee alleged and proved fraud or its equivalent, intentional violation of the essential principles of practically uniformity and discrimination between the value assessed against the land of the estate and those surrounding it, and there was no error in the holding of the Court of Civil Appeals. Lively v. Missouri, K. & T. Ry. Co., 120 S. W. 852, 856; Garza Land & Cattle Co. v. Redwine Ind. Sch. Dist., 282 S. W. 905; Weatherly Ind. Sch. Dist. v. Hughes, 41 S. W. (2d) 445.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

The Dallas National Bank, as trustee, brought this suit against Dallas County and its proper officials to restrain the enforcement of a 1941 tax assessment against certain land held by it as trustee, alleging arbitrary, discriminative, and fraudulent methods in valuation. Trial before the court without a jury resulted in judgment for the defendant. This judgment was reversed by the Court of Civil Appeals, and judgment rendered for plaintiff, Chief Justice Bond dissenting. 173 S. W. (2d) 558.

The land in question, known as the W. P. Jackson Estate, of some 153 acres, lies in the northern part of Dallas County and adjoins the Preston Road, a cardinal highway extending northward from the Dallas city limits. In May, 1941, appellant's trust officer duly rendered the tract for State, County, and School tax purposes, with the Dallas County Assessor, for $4,190.00, or approximately $27.00 per acre; the rendition being in effect the same as of previous years. The Assessor indicated his dissatisfaction with the Bank's valuation and proposed an increase of $30,300.00, or approximately $200.00 per acre. Upon protest, the Commissioners' Court sitting as a Board of Equalization lowered the valuation to $27,400.00, or approximately $175.00 per acre. The Bank being dissatisfied with this valuation brought suit to set it aside.

Prior to the hearing in question, the Commissioners' Court had provided that property in Dallas County should be assessed at 55% of its value. The testimony shows that this tract of land is unimproved and is worth from $250.00 to $300.00 per acre. The surrounding farms, some of which are improved, are approximately of the same value per acre. The plaintiff introduced testimony to show the valuation at which the surrounding tracts were assessed for taxation by the County for the same year. These valuations were as follows:

| Tract | Acreage | Assessed Value Per Acre |
|---|---|---|
| Henry D. Lindsley | 305.59 | $ 35.00 |
| Aronson and Florence | 35.91 | 20.00 |
| S. W. Armstrong | 99.00 | 20.00 |
| J. H. Luna | 68-1/4 | 29.00 |
| S. J. Schreiber | 116.8 | 28.00 |
| H. A. Schreiber | 70.36 | 28.00 |
| Alvah H. Daniel | 102.1 | 24.00 |

It will be seen from the above facts that the Board of Equalization valued the Bank's land at $175.00 per acre, whereas it valued all of the adjoining tracts, which were approximately of the same kind and value, at an average of slightly over $26.00 per acre. The Bank's land was assessed at a value approximately seven times as high as similar land of the same value.

Our Constitution provides as follows:

"Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Art. VIII, Sec. 1, State Constitution.

■ The discrepancy between the value at which the Bank's property was assessed and that at which the seven adjoining tracts of the same value were assessed is indeed great. The valuation in this respect is not equal and uniform, and if the same discrepancy existed throughout the county there is merit in the Bank's complaint. A reasonable discrepancy between the the true value of the property and the value at which it is assessed for taxes will be permitted to cover the difference in judgment as to the value of the property; but where the property is assessed at a value seven times as high as its true value, the discrepancy is too great. It does not evidence a mere difference in judgment as to the value of the property. Cooley Taxation (4th Ed.), Vol. 4, p. 3318, sec 1645; 61 C. J. 856; Johnson

v. Holland, 17 Texas. Civ. App. 210, 43 S. W. 71 (writ refused) ; Simkins v. City of Corsicana, Texas Civ. App., 86 S. W. (2d) 792.

■ On the other hand, one whose property has been assessed on substantially the same basis as the great bulk of the property on the same tax roll may not have his assessment cancelled merely because in isolated instances some of the other property on the tax roll has been assessed at less than its proportionate value. 3 Cooley Taxation (4th Ed.), p. 2296, sec. 1143; City of Roanoke v. Gibson et al, 161 Va. 342, 170 S. E. 723; State ex rel. Schoonover v. Stewart et al, State Board of Equalization, 89 Mont. 257, 297 Pac. 476, par. 14; People ex rel. Two Lakes Corporation et al v. Mathews et al (N. Y.), 272 N. Y. S. 649, par. 2.

On a former date we affirmed the judgment of the trial court on the ground that the Bank's property was assessed on substantially the same basis as the bulk of other property in the county, and that it was only in isolated instances in which the other property was assessed on a basis that was out of line with the assessment against the Bank's property. Upon further consideration we have concluded that we were in error in so holding.

While the Commissioners' Court did agree in advance that all property in Dallas County would be assessed on a basis of 55% of its true value, we are unable to find any evidence whatever in the record to show that this agreement was carried out. There is no evidence as to the basis used in assessing any other property in the county. County Commissioner Field testified that there was a great inequality between the assessment placed on the Bank's property and that placed on the adjoining land, and that in order to prevent such inequality it would be necessary to either lower the assessment against the Bank's land or raise the assessment on the adjoining land. He testified that he had voted to lower the valuation placed on the Bank's property. He did not testify that the assessment was in line with other property in the county. Commissioner Garrison testified that there was a discrepancy between the assessment on the Bank's propery and the assessment on the adjoining land. He did not contend that the assessment was in line with other assessments. In fact, he testified: "There is a complete failure of taxation all over the county." Commissioner Singleton testified that in fixing the assessment against the Bank's property the court did not consider the valuation placed on other property in the county, nor undertake to determine whether the basis of valuation was

equal. The fourth Commissioner, Mr. Frank, testified: "I think there is a complete failure of taxation in Dallas County." "Q. Now, when you raised this Jackson property your main consideration was the value; is that a fact? A. That's right. Q. And you didn't consider what the rest was valued at? A. No." He further testified: "Q. Now, Mr. Frank, I believe you made a statement at one or both of those sessions (of the Board of Equalization) that the County of Dallas had purchased from the owners of the Jackson Estate by condemnation proceedings about two acres of land and paid about $500.00 an acre for it? A. That is correct. * * * Q. You made that statement. Now, Mr. Frank, isn't it also true that you made the statement that since the County had paid $500.00 an acre for that land, you would not consider reducing it one dime regardless of the value assessed against other or similar lands in the same vicinity? A. Well, that's correct." The County Judge testified that Commissioner Singleton made a similar statement. Commissioner Singleton said he might have made the statement, but did not recall it.

■ The evidence shows that there were over 100,000 pieces of property assessed for taxes in Dallas County. In order for the Bank to successfully contend that there was inequality between the assessment of its property and that of other property in the county, it was not necessary for it to prove the basis used in assessing each other piece of property in the county. It would place an undue burden on the plaintiff to require it to prove the basis used in assessing every other piece of property in the county. The plaintiff was only required to make a reasonable showing in this respect. It did prove the inequality between the assessment of its property and the seven adjoining tracts of land; and in view of the total absence of any evidence to the contrary we are of the opinion that this is sufficient to establish a prima facie case in favor of the Bank. Since the Bank made out a prima facie case in its favor, and the County offered no probative evidence to the contrary, the trial court erred in rendering judgment for the County.

However, it affirmatively appears that the case has not been fully developed, and since the judgment must be reversed, justice requires that the case be remanded to the trial court for another trial.

The judgment of this Court heretofore entered in this cause is set aside, the opinion is withdrawn, and the judgments of the trial court and the Court of Civil Appeals are reversed, and the cause is remanded for a new trial.

Opinion delivered March 22, 1944.

Rehearing overruled April 19, 1944.