**CITY OF ORANGE, TEXAS, Appellant,**

v.

**LEVINGSTON SHIPBUILDING COM-
PANY, Appellee.**

**No. 16912.**

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

J. C. Hinsley, Austin, Tex., Marlin Thompson, Jr., Orange, Tex., for appellant.

N. W. Collier, John P. Blair, Brown, Beard & Collier, Bell & Blair, Beaumont, Tex., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal concerns the validity of the assessment of local ad valorem taxes made by the City of Orange, Texas, on the personal property of Taxpayer's shipyard enterprise. The case finds its way into the Federal Courts solely because of diversity of citizenship. Our disposition of it demonstrates, we think, that while presumably we must accept them, Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, and do the best we can with such matters relating to the intimate relation between local citizens and governmental entities of the State of Texas in a field of law where so many practical adjustments must continuously be made as the process of tax gathering moves on its relentless and unpopular course, the Federal forum is inept, its arsenal of relief is deficient, and Erie [Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] compels us to accept state holdings with a good deal of literalism that might not be so pervasive were we free, as a State Appellate Court, to modify, restrict or expand the prior doctrines as trial and error proves the need for change.

[1] We come face to face with this at the very outset. For a major part of the final judgment against which the City appeals is a permanent injunction prohibiting the City from enforcing the 1955 tax assessment. This is in the very teeth of the plain command of the statute.[1] How or why this bald prohibition escaped Court and counsel alike need not concern us. The plain fact is that we scarcely begin consideration of the case until we must summarily overturn a major part of the relief granted without regard to whether a Texas court situated similarly might consider an injunction proper and needful. This has more than procedural implications since, as we understand the Texas decisions, the substantive rights of a Taxpayer complaining of local taxes are markedly different between a suit for injunction prior to levy and defense against an assessment already made but unpaid. City of Houston v. Baker, Tex.Civ.App., 178 S.W. 820 (error refused); City of Wichita Falls v. Cooper, Tex.Civ.App., 170 S.W.2d 777 (writ refused).

In its technical form this case is made up of the City's original suit to recover 1954 taxes which was subsequently removed to the Federal Court; a supplemental complaint filed later in the Federal Court seeking injunction for 1955 taxes subsequently accruing; and the Taxpayer's separate complaint for injunction against the 1955 assessment. All were consolidated for trial and hearing before a Special Master. The Court, adopting the Master's report, held that the 1954 assessment was void and denied recovery to the City but without prejudice to a valid reassessment by the taxing Board; that the City's assessment was void as to 1955, but that the City should have final judgment for the amount which Taxpayer tendered into Court as the amount which might properly have been assessed and granted a permanent injunction forbidding the assertion of any other assessment, lien, claim, suit, etc.

With the injunction out of the way, the suit was simply one for delinquent taxes for 1954 and 1955. In such actions, the taxing authority makes out a prima facie case by the introduction of official tax records and proof of non-

---

1. 28 U.S.C.A. § 1341:
"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient reme-

dy may be had in the courts of such State."
The Texas remedies are completely adequate. Norton v. Cass County, 5 Cir., 115 F.2d 884.

payment. Texas Rev.Civ.Stat.Ann., Art. 7326 (Vernon); State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569; East and Mount Houston Independent School District v. South Texas Lumber Co., 153 Tex. 535, 271 S.W.2d 795; Joy v. City of Terrell, Tex.Civ.App., 143 S.W.2d 704 (error dismissed). Once such proof is made, as was indisputably the case here, it is incumbent upon Taxpayer to show that the tax levied and assessed was not in accordance with law.[2]

Taxpayer contends that it established that the assessments for both years were void because of two major deficiencies. First, that a different percentage[3] was used for determination of taxable values as between small commercial business establishments and large industrial plants, and as between certain classes of property, and that, important here, the value of 18 or 19 large industrial plants, of which Taxpayer's was one, was based on the so-called "average plant year reproduction cost coefficient"[4] rather than a percentage of cost as in the case of smaller commercial businesses. Second, that there had been omitted[5] from the tax rolls pursuant to a purposeful plan other personalty subject to tax having a value in excess of $35,000,000 and comprising, so the Master found, 38% of the total value of all taxable property.

While it is certainly true that Taxpayer, both before the Master and the District Court and here as well, argued most strenuously that both deficiencies imperiled the assessments, the fact is that acts done, as distinguished from words said, show that complaint was limited to the first (different percentage of valuation, notes 3, 4, supra) and did not include the second (omitted property, note 5, supra). For as to 1954 and

2. Tex.Rev.Civ.Stat.Ann., Art. 7329, provides:
"There shall be no defense to a suit for collection of delinquent taxes, as provided for in this chapter except:
"1. That the defendant was not the owner of the land at the time the suit was filed.
"2. That the taxes sued for have been paid, or

"3. That the taxes sued for are in excess of the limit allowed by law, but this defense shall apply only to such excess."
Although this appears to be a most stringent limitation upon available defenses, recent decisions of the Texas Courts demonstrate a broader spectrum of defenses. See, e. g., Whelan v. State, 155 Tex. 14, 282 S.W.2d 378.

3. The evidence showed that the following percentages were used:

| General Item | Small. Commercial Taxpayers | Taxpayer |
|---|---|---|
| Machinery & equipment | 50% of cost | * |
| Furniture & fixtures | 50% of cost | 60% of cost |
| Automobiles & trucks | 50% of cost | 50% of cost |
| Inventories | 100% of cost | 100% of cost |

* This was determined by "average plant year reproduction cost coefficient," see note 4, infra.

4. This was the formula devised and applied by Prichard & Abbott, professional evaluation engineers employed by the City for the express purpose of evaluating personalty of the City's large industries. This formula produced a factor which when applied to the residual cost of the several items of machinery was claimed to raise the depreciated value to a current value in current dollars. The factor for Taxpayer was 1.62156.

5. These omissions for 1955 were found by the Master to be substantially:

| Item | Amount |
|---|---|
| 1. Bank Deposits | $20,000,000 |
| 2. Private Automobiles (6,259 vehicles est. av. value $1700) | 10,605,300 |
| 3. Family personal property (5,275 families) | 4,483,750 |
| | $35,090,050 |

again as to 1955, Taxpayer tendered $10,-017.42 and $5,179.88, respectively, as the amounts which it claimed were due for personal taxes. This was based [6] on the use of the same percentage figure of 50% of book value (but not less than 50% of cost) as applied generally to business taxpayers without the use of the reproduction cost coefficient factor, note 4, supra. In computing the tenders which it confessed it owed, no credit was taken nor any adjustment made by Taxpayer for any property omitted from taxation, note 5, supra.

Of course, Taxpayer acknowledges that it is not enough under Texas law to show that percentage figures vary as between classes of properties or that one or more types of property are evaluated by a different formula or rule, or even that the use of a different percentage or unique formula involves a violation of the State Constitutional [7] requirement of uniformity and equality. East and Mount Houston Independent School District v. South Texas Lumber Co., 153 Tex. 535, 271 S.W.2d 795. The limited nature of the relief open to a complaining taxpayer, as well as the heavy burden of proving an actual direct money loss from assessments which violate the State Constitution, is graphically portrayed by the three recent opinions of Justice Calvert for the Supreme Court of Texas.

"If a valuation fixed by a board of equalization is attacked on the ground of unlawful or arbitrary discrimination it is not sufficient to show, comparatively, that in other isolated instances, property of equal or greater value than that in suit, was valued at less, Dallas County v. Dallas Nat. Bank, 142 Tex. 439, 179 S.W.2d 288, or even that other property was omitted from the tax rolls altogether, Sam Bassett Lbr. Co. v. City of Houston, 145 Tex. 492, 198 S.W.2d 879; City of Wichita Falls v. J. J. & M. Taxman Ref. Co., Tex. Civ.App., 74 S.W.2d 524, writ refused; Howth v. City of Beaumont, Tex.Civ.App., 118 S.W.2d 350, no writ, except where the omission was the result of a deliberate and arbitrary plan or scheme to permit certain classes of property to escape their fair share of the tax burden. City of Houston v. Baker, Tex.Civ. App., 178 S.W. 820, writ refused. To prevail on the basis of unlawful discrimination it is not necessary that the taxpayer make a comparative showing with all other property in the county, Dallas County v. Dallas Nat. Bank, supra, but he must make at least a reasonable showing in that respect. Ibid.

---

6. The 1954, 1955 tenders were based on the Taxable Value shown in the column under the heading "Taxpayer's Method." Taxes were levied by the City on the Taxable Value shown in the column under "City's Method":

| | Taxpayer's Method | | City's Method Percentages and Reproduction Coefficient Factor | |
|---|---|---|---|---|
| Year | Taxable Value (50%) | Actual Value (100%) | Taxable Value (50%) | Actual Value (100%) |
| 1954 | $671,120 | $1,342,240 | $969,920 | $1,939,840 |
| 1955 | * 334,186 | 668,372 | 840,310 | 1,680,620 |

*Note: This represents 50% of 80% of book value rather than 50% of 100% as in 1954 as Taxpayer deducted 20% for items of personal property which, it claimed, were erroneously reclassified as real property on the eve of allowance of a 20% credit for personalty taxes in 1955; see note 8, infra; otherwise on Taxpayer's computations this amount would have been $466,965.

---

7. Texas Constitution, Art. 8, § 1; Tex.Rev.Civ.Stat.Ann. Art. 7174 (Vernon).

"When the attack is made because the board followed an arbitrary plan or scheme of fixing values, the taxpayer, to prevail, must show not only that the plan was an arbitrary and illegal one but also that the use of the plan worked to his substantial injury. Druesdow v. Baker, supra; Rowland v. City of Tyler, Tex.Com. App., supra; Lubbock Hotel Co. v. Lubbock Ind. School Dist., supra, 85 S.W.2d [776] at page 778, where it is said: 'A mere theory may not be litigated. * * * There must be more than the mere adoption of a fundamentally wrong principle or method of taxation. The courts grant relief upon "the adoption of a fundamentally wrong principle or method, the application of which substantially injures the complainant." '" State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 573.

"In the recent case of State v. Whittenburg, [153 Tex. 205], 265 S.W.2d 569, 573, we recognized the right to relief from such an arbitrary plan of taxation. However, if the taxpayer fails to avail himself of the remedies of mandamus and injunction to prevent a taxing authority from putting such a plan into effect, as those remedies were used in such cases as City of Houston v. Baker, Tex.Civ.App., 178 S.W. 820, writ refused, and City of Wichita Falls v. Cooper, Tex.Civ.App., 170 S.W.2d 777, writ refused, his right to relief is limited. * * * Once such a plan is put into effect the litigant may defeat the recovery of taxes only to the extent that they are excessive and he must assume the burden of proving excessiveness. * * * The difficulties to be encountered in making the necessary proof as a basis for relief is the penalty the taxpayer must pay for sitting idly by while taxing authorities put into effect a plan of taxation which deliberately permits certain classes of property to escape taxation. * * *

"The general plan of the board was to assess real property at 60% of its value. In so far as relief was sought upon the basis that unlawful methods used by the board in arriving at values of real property have resulted in excessive—as distinguished from unequal—assessed valuations being placed thereon, only those owners of real property who can establish that the unlawful procedures have resulted in actual assessment of their property at substantially more than 60% of market value would be entitled to relief, and then only as to the excess. In so far as relief is sought upon the basis that the unlawful methods used by the board in arriving at values of real property have resulted in unequal values being placed thereon, only those owners of real property who can make a reasonable showing of actual and substantial discrimination against them would be entitled to relief." City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414, 416, 417.

"In State v. Whittenburg, [153 Tex. 205], 265 S.W.2d 569 and City of Arlington v. Cannon, [153 Tex. 566], 271 S.W.2d 414, we recognized that a taxpayer was entitled to relief when by a deliberate and arbitrary preconceived plan of taxing authorities large amounts of property, owned by others, was omitted from the tax rolls. Once such a plan of taxation is put into effect, the taxpayer must assume the onerous burden of proving substantial injury, that is, that his taxes, by virtue of the omission, are excessive or substantially higher than they would have been if the omitted property had been on the rolls. City of Arlington v. Cannon, supra. It is thus that he may establish that his taxes are 'within themselves excessive' within the rule laid down in Sam Bassett Lumber Co. v. City of Houston, Tex.Civ.App., 194 S.W.2d 114, 117–118, and approved by this court

in the same case. 145 Tex. 492, 198 S.W.2d 879–880. It is only thus that he may secure his constitutional right to be taxed on an equal and uniform basis with others." Whelan v. State, 155 Tex. 14, 282 S.W.2d 378, 383.

■ The taxpayer must demonstrate that he has actually sustained damage. Where the claim is that in comparison with other property, other classes of property, or other classes of taxpayers, a different basis has been employed in arriving at taxable values, this burden is translated into a showing that the different basis resulted in the taxpayer paying more than he would had the proper basis been employed. This can only be done by proving that had the proper basis been applied to the actual market value of taxpayer's property, the assessed tax would have been less. This in turn requires proof of the actual market value of the taxpayer's property.

No evidence of actual market value was offered by Taxpayer at all. Without such evidence of market value, Taxpayer has failed to demonstrate that the claimed erroneous assessment caused damage. It has also failed to show that by the use of different percentages or formulae, the system of taxation was unequal. For there must be some comparison of assessment rates to market value, not just a comparison of assessment rates. If, for example, the actual market value of Taxpayer's plant was such that assessed on the basis of 50% of book value (but not less than 50% of cost) as in the case of other commercial establishments would have produced a tax not greater than that computed on the reproduction cost coefficient factor, no injury has been shown even though the formula is conceded to be illegal.[8] Montgomery County v. Humble Oil & Refining Company, Tex.Civ.App., 245 S. W. 326 (error refused n. r. e.), expressly approved in City of Arlington v. Cannon, supra, and State v. Whittenburg, supra.

. As this effectually disposes of the whole ground upon which Taxpayer undertook to show what the correct assessments ought to have been in contrast to what they actually were, we could rest our decision on this without discussing the second claim of invalidity—omission of property from the tax rolls. We think, however, that an analysis of this will demonstrate as well that the Taxpayer has not met the onerous burdens outlined by Justice Calvert in his triumvirate opinions.

In this analysis we assume that substantial amounts of personal property have purposefully been omitted from the tax rolls and that such action is a patent violation of Texas constitutional and statutory requirements. We also accept the inferences drawn by the Master from such of the evidence as is conflicting which leads him to find, as confirmed by the District Court, that large sums of property were illegally omitted. In rejecting his conclusions as to the probable dollar amount of omitted property and the related one that Taxpayer showed immediate and personal detriment, we do it by accepting at face value, but no more, all evidence favorable to the report. Conversely, rejection of his ultimate conclusion rests on the self-contained deficiencies in the proof itself.

The thesis of Taxpayer is substantially this: had personal property of an actual value of $35,000,000, note 5, supra, not been omitted, the tax rolls would have been approximately $90,000,000; consequently, for the City to raise the same amount of tax dollars, all taxpayers

---

8. This likewise applies to those properties reclassified from personalty to realty as well as to the claim for 1955 that in fixing taxable values of personalty an arbitrary reduction of 20% was made to equalize the tax burden between business taxpayers and those others whose personal property was omitted from the tax rolls, see note 5, supra. The actual market value of Taxpayer's realty was not proved. For all that is known, the tax on the disparate percentage was less than what it would have been had a uniform percentage without reduction for personalty been applied to its actual market value.

would have paid 35/90 or 38% less taxes had all personalty been included.[9] So the Master found as to this Taxpayer.

The theory is a good one, but as the Texas Courts point out, this is not enough. It must finally be translated into hard dollars out of the complaining taxpayer's pocket. This cannot be done here for at least two reasons. First, there was inadequate proof of the actual or taxable value of the omitted properties; and second, Taxpayer failed to show that had it, along with all others, been taxed for properties within the omitted classifications, the tax due on the large value of such properties admittedly owned by Taxpayer, the actual tax paid by it would have been less. Both are intertwined and we discuss them together.

It was established convincingly that Taxpayer owned personalty of a kind subject to taxation, but which escaped it having an actual value of not less than $668,000 excluding the tugs and barges whose tax situs is more doubtful. Using the Taxpayer's basis, see note, 6, supra, for taxable valuation of personalty actually assessed and correcting it to 100% as for actual value, these omitted properties amount to 33% and 51% of the total personalty subject to taxation for 1954 and 1955, respectively. Using the City's value, note 6, supra, corrected to 100%, the omissions are 26% and 28% for these same two years.

Thus, on the Taxpayer's basis, in the one case for 1955 the amount (51%) of such properties to be added in Taxpayer's assessment exceeds by considerable degree the theoretical 38%. In the other for 1954 the margin of difference is but 5% (38%; 33%). While on the City's basis the margin between this percentage and the theoretical 38% is somewhat greater (38% compared with 26%· and 28%), downward adjustments in the assumed total of $35,000,000 of omitted properties could easily overcome any theoretical loss. This is particularly true since, as we point out in note 9, supra, the omitted properties are more nearly 32–33% rather than 38% of the total assumed taxable properties. By this we do not mean to say that we may sit here far removed from the scene and pick such figures and calculate such percentages as we, rather than Master or District Court, would think proper. What we mean to say is that this demonstrates why Taxpayer must establish with certainty the real taxable values of omitted properties. This will show also why it has failed in carrying this burden.

There are three main items of omitted properties. Of these, bank deposits is the largest. Actually little of relevance was proved. By admission made pursuant to formal request, F.R.C.P. 36, 28 U.S.C.A., the City acknowledged that deposits in Orange banks for 1954 amounted to a sum in the neighborhood of $20,-400,000. And testimony showed that for 1955 published bank statements reflected a total of approximately $25,000,000 of deposits. However, there was no proof whatsoever as to the ownership of these deposit accounts, either separately or by classifications. As bank deposits are relevant only insofar as they represent personal property of taxpayers other than the depository banks, it was essential to prove how much of these deposits repre-

---

9. Along with other things, the arithmetic is also obscure. Accepting full value for omitted property, note 5, supra, and the value stated by the taxing authority or found by the Master as to property on the tax rolls, the total is much greater than $90,000,000, and consequently the percentage of the omitted to the whole is much less:

| Year | (1) Taxable Value Property on Rolls | (2) Multiply (1) by two for actual value | (3) Full Value Omitted Property, Note 5, supra | (4) Total (2) & (3) | (5) Percent that (3) is of (4) |
|---|---|---|---|---|---|
| 1954 | $35,784,120 | $71,568,240 | $35,090,050 | $106,658,290 | 33% |
| 1955 | 36,922,370 | 73,844,740 | 35,090,050 | 108,934,790 | 32% |

sented property subject to tax by the City of Orange. From the reported total would have to be excluded all balances of federal, state, county, municipal, school, or other governmental entities, governmental administrative agencies and corporations, deposits of exempt charities such as schools, churches, hospitals, community chests, and the like, as well as deposits of a kind which, under Texas law, would be taxable only at the residence of the owner, not the situs of the deposits.

As the margin of difference between the percentage of its own omitted personalty (33%) and the 38% omitted generally most favorable to Taxpayer is but 5% for the year 1954, a downward change of not too great proportions could alone wipe out the difference. As it works out, Taxpayer here had to prove that no such adjustments were called for.

It only gets worse as the other two items of personal property are considered. The second was for personal, private automobiles. Actually, there was no proof as such that there were that number of automobiles having that value in the City of Orange for 1954. All that was proved was that when it came to fixing the assessments for 1955, the Board of Equalization thought that there should be some arbitrary percentage reduction in the case of personal property taxpayers because, as this Taxpayer and other complainants had pointed out, there were these major omissions of property from the tax rolls. To determine what that adjustment should be, thereafter fixed at 20%, see notes, 6, 8, supra, the Board considered that private personal automobiles would have an average value of $1700. This was, of course, entirely adequate for the Board's purposes, but this is far from even minimal proof that had the City in good faith undertaken to assess automobiles and collect taxes on them, their average value would have been $1700 aggregating $10,-605,300.

The same thing was true of household furnishings, the assumed value of which ($4,483,750) was likewise considered for the limited purpose of a credit, not a tax. Considering the nature of such property this was evidence of the flimsiest kind.

■ ■ there is one thing made plain by the contemporary authoritative decisions of the Texas Courts and especially that of Montgomery County v. Humble, supra, it is that when taxpayers undertake to establish invalidity either from excessiveness or inequality, it is not enough to take values fixed by the taxing authorities. If comparative values are relevant, either to establish excessiveness, inequality, or as here to show the dollar impact of omissions of property from the tax roll, the actual values must be established in a traditional way.

■ As it now stands, no one knows how much in dollars or what part in percentage of these three omitted items should be reduced because of these factors affecting their tax assessability. It could be much or little. But it was an inherent part of the burden which the Taxpayer took on but did not carry. The result is that the City's prima facie case remained unrebutted at the close of the trial, and the judgment had to go for it for both years.

In this respect the case, following the doctrine pronounced by that decision, is unlike Whelan v. State, supra, which recognized that purposeful omission of bank deposits might establish invalidity. There a reversal was ordered to allow proof and a trial on that issue. Here, the trial was had. All parties had unlimited opportunity to prove all that they wished on this phase which was regarded by all to be a crucial one. If the proof is deficient, as we hold it is, it results not from any error in law below or here, but from an absence of proof or a failure to produce it if available. That judgment goes against a party in such a situation is merely the common plight of anyone who has a burden and fails to carry it.

So that it would not divert the simultaneous consideration of both factors, we

**248**

have purposefully deferred discussion of the propriety under Texas law of taking into account the effect of Taxpayer's ownership of properties of the kind illegally omitted from the tax rolls generally. It would be a strange doctrine indeed which allowed one to upset an assessment program because of omissions of property and, at the same time, contend that in determining the dollar impact of any such illegality, the Court cannot consider what the particular taxpayer would have paid on his own properties had they been properly included. That would not be good logic, good sense, or good morals. That Texas Courts would not permit it is expressly reflected by Whelan v. State, supra. To require ascertainment and proof on this is not to impose any sort of estoppel. It is merely an application of the approach consistently laid down that no matter how illegal the assessment, no matter how much it violates the State Constitutional pattern, the only relief of a taxpayer defending delinquent tax suit is to show in dollars that he is worse off.

. Consequently, Taxpayer failed in meeting the burden imposed by the Texas law. The judgment ought to have been entered for the City for the amount of its assessments for each of the two years. Since the Master found, and the Court approved, that reasonable attorney's fees were earned and would be 10% and denied them merely out of equitable considerations because the assessment in each year was invalid, and the tender in one (1955) was itself sufficient, all of which grounds we have now held to have been clearly erroneous under the evidence in this record, it follows that the judgment should include taxes, statutory penalties, interest and 10% attorney's fees. For the computation of such amounts and for such other and further consistent proceedings, the cause is reversed and remanded with directions.

Reversed and remanded with directions.