John L. DIETRICH, Assessor and Collector
of Taxes for the City of Galveston,
etc., Appellant,

v.

James H. PHIPPS, Appellee.

No. 15455.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

March 13, 1969.

Rehearing Denied April 3, 1969.

Cody D. Greer, City Atty., Gene F. Smith, Asst. City Atty., Galveston, for appellant.

Phipps, Smith, Alexander & Herz, Irwin M. Herz, Jr., Galveston, for appellee.

COLEMAN, Justice.

This is a suit to enjoin appellant, in his official capacity as tax assessor and collector of various taxing agencies, from collecting taxes on certain described property belonging to appellee located in the City of Galveston, Texas on the basis of the assessment made by the assessor-collector. The trial court, sitting without a jury, granted an injunction.

The questions involved are (1) was an arbitrary and fundamentally erroneous plan or scheme of valuation used by appellant and the Equalization Board in assessing taxes for the districts involved? and (2) did appellee suffer substantial injury by reason of the use of such scheme or plan?

On January 1, 1967, and at the time of the trial appellee was the owner of Lots 13 and 14 in Block 256, City and County of Galveston, Texas. These lots are within the boundaries of the City of Galveston, the Galveston Independent School District, the Galveston County Navigation District No. 1, and the Galveston Junior College District, all of which levied ad valorem taxes for the year 1967. Defendant, John L. Dietrich, was at all pertinent times the assessor and collector of taxes for each of these political subdivisions. On the lots in question is located an apartment project consisting of fourteen units. Appellant assesses improvements separate from the land on which they are located. There is no dispute concerning the assessed value of the apartment project aside from the value placed on the land. The property in question is located in an area zoned for residential and apartment units.

The trial judge filed findings of fact and conclusions of law generally supporting his judgment. No attack is made on these findings other than appears in appellant's three points of error reading:

1. The trial court erred in overruling the appellant's motion for a directed verdict which was predicated on the grounds that the appellee failed to prove an arbitrary and fundamentally erroneous scheme of valuation and failed to prove substantial damages.

2. The trial court erred in concluding that the amount of $76.34 of taxes constitutes substantial damages to the appellee.

3. The trial court erred in concluding that the appellant's method of valuing the appellee's land at a higher front foot value for having six (6) or more apartment units constitutes an arbitrary and fundamentally erroneous plan or scheme of valuation.

Appellant Dietrich testified that the H. L. Yoh Company was hired to revalue the entire City of Galveston. Agents of that company made a study of land sales throughout the area and determined the value of the land on a front foot basis. In general the market value of land was ascertained by area. He agreed with and accepted the values so determined. The Yoh report was received in 1963. It consisted of a residential manual, which contained a map showing the front foot values, and a commercial manual. He testified that the manuals were guidelines for use in the tax office in order to keep all people in a like situation on the same basis. He testified that he went "by the book," and applied it uniformly on all pieces of property. There has been no basic change in the manuals since 1963.

The residential manual contained "Rule 14—Non-Conforming Use." The application of this rule has created this controversy. It reads: "Any residential land being utilized for commercial usage is valued at 150% of the residential front foot value. Any commercial land being utilized solely for residential purposes is valued at the optimum residential rate for that particular area."

The testimony clearly shows that the value ascertained by the application of Rule 14 is not the actual cash market value of the property. The same value would be given to a lot improved with twenty apartments as to a lot with only six. A lot improved with five luxury apartments would be valued at a lesser figure than an adjoining lot improved with six small efficiency apartments. The testimony is that neither the amount of rental received from the apartments nor the value of the apartment building was considered in determining the value of the lot. The same formula is used in determining the value of a lot on which are constructed six or more apartments as would be used if a supermarket or a barber shop should be constructed in an area predominantly residential in character. The assessor-collector, after consultation with others, de-

termined that the construction of six or more apartments on a lot constituted a business use of the lot, while the erection of a lesser number on the lot was not a business use. The increased valuation was required by the use made of the property, not by the nature of the property or location of the property, and a change in use might result in a change in valuation.

■■■ The term "value" as used in Article 8, Section 1, of the Constitution of the State of Texas, Vernon's Ann.St., means the reasonable cash market value. Where the Board of Equalization adopts a plan or scheme which is fundamentally wrong in that values are arbitrarily determined, this section of the Constitution has been violated. Appellant Dietrich and the Board of Equalization followed an arbitrary method and scheme of fixing the valuation of appellee's real estate, as found by the trial court. Rowland v. City of Tyler, 5 S.W.2d 756 (Tex.Com.App.1928); State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076 (1935).

In Rowland v. City of Tyler, supra, the court said:

"The courts have frequently, and we think properly, condemned the action of boards of equalization in taking any one particular element as a rigid standard by which values of real estate shall be determined. The true value of real estate cannot be arrived at unless equalization boards give consideration to all proper elements that are determinative of the market value thereof."

In State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569 (1954), the Supreme Court recognized that valuations fixed by boards of equalization can be attacked by allegations and proof of the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation, provided that it can be shown that the use of the plan worked a substantial injury. The Court also said: " * * * To prevail on the basis of unlawful discrimination it is not necessary that the taxpayer make a comparative showing with all other property in the county, * * * but he must make at least a reasonable showing in that respect."

In Dallas County v. Dallas Nat. Bank, 142 Tex. 439, 179 S.W.2d 288 (1944), the Supreme Court found that there was a great discrepancy between the value placed on the Bank's property and that placed on seven adjoining tracts, and that the discrepancy was too great to evidence a mere difference in judgment as to the value of the property. The Court said that "one whose property has been assessed on substantially the same basis as the great bulk of the property on the same tax roll may not have his assessment cancelled merely because in isolated instances some of the other property on the tax roll has been assessed at less than its proportionate value." The Court held:

"It would place an undue burden on the plaintiff to require it to prove the basis used in assessing every other piece of property in the county. The plaintiff was only required to make a reasonable showing in this respect. It did prove the inequality between the assessment of its property and the seven adjoining tracts of land; and in view of the total absence of any evidence to the contrary we are of the opinion that this was sufficient to establish a prima facie case in favor of the bank. Since the bank made out a prima facie case in its favor, and the County offered no probative evidence to the contrary, the trial court erred in rendering judgment for the County."

In Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (1955), the Court stated that Dallas County v. Dallas National Bank, supra, held that "the taxpayer was entitled to relief if he made a showing of discrimination by comparison of the assessed valuation of his property with the assessed valuation of the property of a

reasonable number of other taxpayers similarly situated." The Court stated that "if one element of their defense is that through the use of a formula, or otherwise, discrimination has been practiced against petitioners in the valuation of oil producing properties of others and petitioner[s make] a showing of such discrimination issues should be submitted inquiring as to the market value of petitioners' properties and as to the market values of other producing properties as to which evidence is adduced. * * *" The Court then stated that if the answers to these issues satisfy the court that petitioners have suffered substantial injury by reason of the actions of the taxing authorities complained of, the assessments of petitioners' properties should be cancelled without prejudice to the right of taxing authorities to accept petitioners' taxes on the basis of the valuations at which the petitioners rendered their properties or to proceed under the provisions of Article 7346, Vernon's Ann.Civ.St.

█ Appellant Dietrich testified that all properties were valued in accordance with the Yoh Company manuals. There is testimony that the market values fixed in the Yoh appraisals as found on the map were correct. Appellee introduced into evidence the values placed on various properties in his neighborhood, and that these values were based on the $80.00 per front foot market value established by the manuals. There is testimony that all of the property in the City was valued in accordance with the basic market values, and the formulas, found in the Yoh manuals. There is evidence that the actual monetary loss to appellee by reason of the application of the Rule 14 formula in establishing the valuation of the property in question instead of using $80.00 per front foot, the market values shown on the map for residential lots in the area in which appellee's lots are located, was $76.34.

In City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954), the Supreme Court said:

"The Board of Equalization did not follow the statutory mandates for arriving at the value of property. It ignored market value as the basis for valuation. Its procedures in this respect were wholly unlawful and fundamentally wrong. It is now settled, however, that to obtain relief from taxes arrived at through the use of an arbitrary, illegal and fundamentally erroneous plan of valuation, the taxpayer must show substantial injury. Druesdow v. Baker, Tex. Com.App., 229 S.W. 493, affirmed Baker v. Druesedow, 263 U.S. 137, 44 S.Ct. 40, 68 L.Ed. 212; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Lubbock Hotel Co. v. Lubbock Ind. School Dist., Tex.Civ.App., 85 S.W.2d 776, no writ history. We had occasion to write at some length on the subject in State v. Whittenburg, supra, and what was said there need not be repeated here.

"* * * In so far as relief is sought upon the basis that the unlawful methods used by the board in arriving at values of real property have resulted in unequal values being placed thereon, only those owners of real property who can make a reasonable showing of actual and substantial discrimination against them would be entitled to relief.

"* * * In so far as relief is sought by the owners of personal property upon the basis that higher percentages were applied to the property of the litigants, only those owners who can establish that their personal property was *actually* assessed at a substantially higher percentage of its market value than that used for other property would be entitled to relief, and then only to the extent of the excess. Such was the precise holding of the Court of Civil Appeals in Montgomery County v. Humble Oil & Refining Co., 245 S.W.2d 326, to which holding we gave our approval in State v. Whittenburg, supra."

Appellant ignored market value as the basis for valuation of those properties to which he applied the "Rule 14" formula.

The procedures used were unlawful and fundamentally wrong. Appellee made "a reasonable showing of actual and substantial discrimination" in that his real estate "was actually assessed at a substantially higher percentage of its market value than that used for other property." Appellee made a showing of discrimination by comparing the assessed valuation of his lots with the valuation placed on the lots of a reasonable number of other taxpayers similarly situated.

The points urged by appellant do not present error. The judgment of the Trial Court is affirmed.